Vernon SPEIDEL, Appellant,

v.

Robert KELLUM, a Minor, by his Guardian ad litem, M. C. Kellum, Defendant,

and

Northwestern Mutual Insurance Company, Garnishee-Respondent.

Annette SPEIDEL, a Minor by her Next Friend, Vernon Speidel, Plaintiff-Appellant,

v.

Robert KELLUM, a Minor, by his Guardian ad litem, M. C. Kellum, Defendant,

and

Northwestern Mutual Insurance Company, Garnishee-Respondent.

Nos. 23138, 23139.

Kansas City Court of Appeals.

Missouri.

Oct. 3, 1960.

Alan B. Slayton, Rufus Burrus, Independence, for appellants.

Shughart, Thomson, Stark & Kilroy, Harry P. Thomson, Jr., Donald L. Shughart, Kansas City, for respondent.

BROADDUS, Judge.

The instant action is a garnishment proceeding in aid of executions issued upon separate judgments. One judgment in the amount of $5,000 was in favor of the plaintiff, Vernon Speidel, the other in the amount of $2,500 in favor of the other plaintiff, Annette Speidel. These judgments were for personal injuries sustained by plaintiffs as a result of a collision between the automobile in which they were riding and one driven by the defendant Robert Kellum. At the close of all the evidence the court directed a verdict for the garnishee, Northwestern Mutual Insurance Company. Plaintiffs have appealed.

The only issue involved on this appeal is whether a liability policy of insurance issued by the garnishee, Northwestern Mutual Insurance Company, to one Louis D. Ramsey, the named insured, afforded coverage by the terms of said policy to defendant Robert Kellum at the time he was involved in the automobile collision with the plaintiffs.

The evidence was that the defendant Kellum was working in a grocery store managed by Louis D. Ramsey and located at 40th & Wayne in Kansas City, Missouri. Ramsey was the owner of a Buick automobile which was operated by Kellum at the time it was involved in the collision with the plaintiffs on September 13, 1957. Ram-sey had taken his car to a garage located at 9th & Prospect several days prior to the accident, and while his car was being repaired, the garageman loaned him a Cadillac automobile to drive to and from work. On the day before the accident, Mr. Ramsey directed defendant, Kellum, to take the loaned vehicle back to the garage at 9th & Prospect and pick up his vehicle. The Ramsey car was not ready so defendant, Kellum, returned to the store in the loaned Cadillac. The evidence further showed that Kellum had driven Ramsey's car on one occasion to make a delivery from the store. This was before Kellum was, in fact, employed at the store.

The evidence of both defendant Kellum and Ramsey was that at about 2:30 p. m. on the day of the accident Kellum was directed to go down to the garage and bring Ramsey's car back to the store and to hurry back because it was Friday, their busy day. When Kellum arrived at the garage at about 3:00 p. m. he called Ramsey telling him the car would not be ready for about 20 minutes, and about 20 minutes after that the garage owner called Ramsey and told him the car would be ready about 4:00 p. m., and when Kellum did not return to the store by 4:20 p. m., Ramsey learned from the garage man that Kellum had left the garage at 4:00 p. m.

The evidence further showed that the only instruction that Kellum had concerning the car was to get the car and bring it back to the store. The time for making this trip from the garage to the store, considering average traffic conditions, would not have ordinarily taken over twenty minutes.

After Kellum left the garage he drove west on 9th Street to Troost Avenue, which is several blocks west of Wayne, then turned south on Troost to 18th Street, and then at 18th Street turned west to Campbell, picked up three friends, Jerry Painter, Shirley and a boy by the name of Walt. Kellum then drove back to Troost Avenue and south on Troost to 33rd Street and then on to 39th

Street by means of some other streets and then travelled east on 39th Street, making one stop to allow one of his friends to cash a check, and then a second stop at 39th & Hardesty where he let out his friends, Shirley and Walt. He then proceeded on east to the intersection of 39th & Van Brundt intending to turn around and come back and engage in conversation with Shirley and Walt in the vicinity of 39th & Hardesty. According to a map introduced in evidence by plaintiffs, Troost Avenue, the street which Kellum drove south on is 1100 east of Main Street and Wayne where Kellum was to return the vehicle is 1600 east of Main and the intersection of 39th & Van Brundt where the collision occurred, is 4800 east of Main. In other words, the evidence discloses that Kellum picked up the car, drove approximately five blocks west of Wayne to Troost Avenue, then turned around and drove 32 blocks east of Wayne to the scene of the accident.

The insurance policy issued to Ramsey contained this language: "Persons Insured: The following are insured under Part 1: (a) With respect to the owned automobile, (1) The named Insured and any resident of the same household, (2) Any other person using such automobile, provided the actual use thereof is with the permission of the named Insured."

■ ·The above provision "(2)" is commonly referred to as the "omnibus clause." It has been before the appellate courts of various states many times. See 5 A.L.R. 2d 600; 106 A.L.R. 1251–1270; 126 A.L.R. 544–558; 5 A.Am.Jur., page 94; 45 C.J.S. Insurance § 829, page 894. Recently it was before the St. Louis Court of Appeals in the case of McKee v. Travelers Ins. Co., 315 S.W.2d 852, 857. As that well considered opinion points out the decisions disclose that there are three lines of authority dealing with the construction of the word "permission" in an omnibus clause. The first is the so-called initial permission or liberal rule under which the employee

need only have received permission to take the vehicle in the first instance, and any use while it remains in his possession is said to have been with the permission of the named insured.

Under the second rule, known as the strict or conversion rule, for the use of the vehicle to be within the omnibus clause the permission given to the employee must extend, not only to the initial use of the vehicle, but also to the particular use being made of the car at the time of the accident.

The third rule is called the moderate or minor deviation rule. Under this rule a minor deviation from the purpose for which the employer granted the employee permission to use the vehicle will not be sufficient to exclude the employee from coverage under the clause, while a material deviation is held to constitute a use of the automobile without the employer's permission.

The McKee case turned upon the proposition that the evidence conclusively showed that Strickland, the employee, had used the employer's automobile for his own purposes in "direct violation of the employer's specific orders;" and that, under those circumstances, Strickland did not have his employer's permission to use the vehicle within the meaning of the omnibus clause, and was not an additional insured under the terms of his employer's automobile indemnity policy.

■ In the instant case the evidence does not conclusively show that Ramsey gave Kellum any specific orders relative to the use of the Buick automobile. Thus we are here confronted with this question (one of first impression in this state)—which of the three rules mentioned in the McKee opinion should we adopt? We are of the opinion it should be the third, the moderate or minor diversion rule. Our courts have taken a firm position in cases arising under the *respondeat superior* ˙doctrine where employees have deviated from the scope and course of their employment. As said

in the case of Rainwater v. Wallace, Mo. App., 169 S.W.2d 450, 456, affirmed 351 Mo. 1044, 174 S.W.2d 835:

■ "It is the well established rule in this state, that a servant does not step without the scope of his employment, as a matter of law, by joining some private business of his own with that of his master's, except where he makes a marked deviation from his master's business." To the same effect are the more recent cases of Brown v. Moore, Mo.Sup., 248 S.W.2d 553, 557, and Beckwith v. Standard Oil Co., Mo.Sup., 281 S.W.2d 852.

■ The only permission Kellum had was permission to do the thing he was instructed to do, namely: to go to the garage, get the automobile and return it to the store. He was never given permission to use this automobile for his own personal pleasure or that of his three friends. He was some thirty-two blocks east of the store at 40th & Wayne, and two and one-half miles off of the usual route. The deviation was of a "marked and decided character." All of the evidence proves that Kellum had no authority to take the automobile to the place where the collision occurred. Thus there was no issue to submit to the jury. The question was one of law. Beckwith case, supra, loc. cit. 855. The trial court did not err in directing a verdict for the garnishee. The judgment is affirmed.

All concur.