## NORMAN GENE WILSON v. HARTFORD ACCIDENT AND INDEMNITY COMPANY.

(Filed 13 December, 1967)

**1. Evidence § 33—**

Evidence of a statement, oral or written, made by a person other than the witness and offered for the purpose of establishing the truth of the matter contained in the statement, is hearsay.

**2. Evidence §§ 17, 33—**

The rule relating to the admissibility of hearsay evidence is not applicable to testimony that a particular statement was made by some person other than the witness when the fact sought to be established is the making of the statement itself.

**3. Evidence § 33; Insurance § 57—**

Testimony of a witness that she was in a position to hear and did hear her father ask the owner of an automobile if he could use the car and that she heard the owner reply "Okay," is properly admitted in evidence, since it is competent to show that the statements were made.

**4. Evidence § 17—**

A witness, shown to have been in a position to see or hear what occurred, may testify not only to what he saw and heard but also to what he did not see or hear.

**5. Same; Insurance § 57—**

Testimony of plaintiff's witness that he failed to hear the owner of an automobile impose a limitation upon the bailee's use of the vehicle is properly excluded where such testimony clearly establishes the possibility that such witness did not hear the entire conversation relating to the grant of permission to use the automobile.

**6. Appeal and Error § 49—**

The exclusion of testimony cannot be held prejudicial when the same witness is thereafter allowed to testify to the same import.

**7. Evidence § 17; Insurance § 57—**

There is no inconsistency in allowing an owner of an automobile to testify as to statements made by him to the bailee of the car imposing limitations upon the use of the car, and in excluding testimony by other witnesses that they did not hear such a statement, where the testimony of such other witnesses establishes that they did not hear the entire conversation.

**8. Insurance § 57—**

The bailee of an automobile is covered under the "omnibus clause" of an automobile liability policy only where his use of the vehicle at the time of the accident is within the scope of the permission granted to him, and a material deviation from the grant of permission by the bailee is not a permitted use within the meaning of the omnibus clause.

**9. Same—**

In an action to recover under the omnibus clause of an automobile liability policy, the plaintiff has the burden to show that the bailee's use of

the automobile at the time of the accident was within the scope of the permission.

**10. Same—**

Permission to use an automobile may be express or implied, and evidence of strong social relationships between the owner and the bailee is relevant to show the extent of an implied permission, but the proof of such relationships cannot overcome the effect of limitations expressly imposed by the owner of the car upon the bailee.

**11. Same—**

In an action to recover under an omnibus clause of an automobile liability policy, evidence that the bailee of an automobile was given permission by the owner to use the car, but was told to return it by one o'clock so that the owner could return to work, and that the bailee had an accident with the car some ten hours after the expiration of the time limit imposed, is sufficient to support an instruction to the jury that, assuming the evidence to be true, the bailee's conduct was a material deviation from the grant of permission.

APPEAL by plaintiff from *Harry Martin, S.J.*, at the 26 June 1967 Regular Civil Session of GUILFORD, High Point Division.

In a former action the present plaintiff, Wilson, recovered judgment against the then defendant, Harvey Lee Perdue, for $5,392.20 on account of injuries received by Wilson when the automobile, in which he was riding as a passenger, collided with a utility pole due to the negligence of Perdue, the driver. This judgment has not been paid.

Wayne Edward Benson was the owner of the automobile. The collision and injury occurred at 11 p.m., 23 January 1965. There was then in effect a policy of automobile liability insurance issued by the present defendant, Hartford, to Benson covering this automobile. Hartford agreed "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * * sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile." The policy defined the term "insured" to include not only Benson, the named insured, but also "any person while using the automobile * * * provided the actual use of the automobile is by the named insured or [his] spouse or with the permission of either." The limit of liability of Hartford under the policy for injuries sustained by one person is $5,000. The policy provides that any person who has secured judgment against "the insured" after actual trial "shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy." Accordingly, in the present action, Wilson sues Hartford for $5,000 with interest from the date of the judgment obtained by him against Perdue. Hartford's defense is that Perdue was not driving the automobile

with the permission of Benson at the time of the collision and, therefore, Perdue was not an "insured" under this policy.

The following issue was submitted to the jury: "Was Harvey Lee Perdue, at the time of the collision, driving the insured 1965 Mustang with the permission, express or implied, of Wayne Edward Benson?" The jury answered this issue "No." From judgment entered in favor of the defendant in accordance with the verdict, the plaintiff appeals.

It is undisputed that Benson, 23 or 24 years of age, was and for several years had been a good friend of Harvey Lee Perdue and his family, visiting frequently in the Perdue home, being a contemporary of Perdue's son and daughters. Perdue was a long distance truck driver. Benson was employed at a furniture factory. Shortly before noon on 23 January 1965, Benson drove to the Perdue home in his Mustang automobile, went into the house and conversed with Mr. and Mrs. Perdue and other members of the family. A few minutes later Perdue drove away alone in Benson's automobile with Benson's permission. Neither he nor the automobile was seen again by Benson, or the other members of the Perdue family, until after the collision, which occurred at 11 p.m.

The plaintiff's only witnesses were Mrs. Perdue and Miss Delores Perdue, Harvey Lee Perdue being out of the State on a truck-driving assignment at the time of the trial.

Mrs. Perdue testified that her husband had driven Benson's Mustang automobile prior to this occasion, but she did not know how many times he had so driven it. Before Perdue left the house in Benson's car, the conversation in the group was general and Mrs. Perdue does not remember "everything that was said" nor "what the conversation was about." She testified, "It has been so long I can't remember two or three years back exactly what all was said that day."

The plaintiff assigns as error the sustaining of the defendant's objections to questions directed to Mrs. Perdue by the plaintiff, which, had she been permitted to answer them, would have elicited her testimony that she did not hear Benson tell her husband how long he could use the car or when to bring it back.

Miss Delores Perdue testified that, prior to the occasion in question, her father had driven automobiles belonging to Benson "a couple of times," and "on some occasions" Benson had driven automobiles belonging to Perdue. On 23 January 1965, when Benson came to the Perdue home, she "was present during some conversations" between her father and Benson. She does not remember where Benson was when her father drove away, except that he was in the house. Benson remained at the Perdue home until after dark. She

and Benson went to the police station after the collision at 11 p.m. and there saw her father. She does not remember seeing Benson give the keys to the automobile to her father. She did not actually see her father drive away in the car.

The plaintiff assigns as error the sustaining of objections by the defendant to questions by the plaintiff to Miss Perdue on direct examination, concerning what she heard said by her father and Benson about her father's use of the automobile. However, when Miss Perdue was recalled by the plaintiff as a rebuttal witness, she was permitted to testify with reference to these conversations as follows:

> "As to whether from the time Mr. Benson was there in our living room on January 23, 1965, I heard any conversation he had with my father before my father left with the automobile, he just asked if he could use the car. My father asked. As to whether I heard Benson's reply, 'Okay.' 'Okay' is all I heard; but I wouldn't say there wasn't more. That is when my father went outside. * * * I don't know what conversation he may have had with my father there on the porch about the use of the car, not if they had one on the porch; I don't know.
>
> "During the conversation that my father and Mr. Benson were having there in my presence, I didn't hear my father tell Mr. Benson anything about what he wanted to use the car for. As to whether I heard Mr. Benson make any statement about having to be back at work at one o'clock, I didn't hear anything but what I told you about the use of the car; and that is all. If they talked, I didn't hear them. The conversation I heard took place right at the door. I didn't see my father leave after the conversation. I wasn't paying attention. As to whether Wayne Benson was in my presence at all times thereafter, or whether he left, he was with us, in the living room. As to whether he ever went out of the living room after he started this conversation with my father that I know of, now that I don't know. It has been several years ago that it happened."

Benson was the only witness called by the defendant. He testified that on 23 January 1965 he got off work for his lunch hour and went to the Perdue home. He had to be back at work at 1 p.m. He parked his car at the Perdue home and went into the house. Perdue asked him if he could use Benson's car for 15 or 20 minutes to run up to the service station to see if his (Perdue's) truck was ready for him to leave. Benson told Perdue he could use the car, telling him 'to come back at one o'clock because I had to go to work." The next time he saw Perdue was after the collision when he saw him at the

police station between 11:00 and 11:30 p.m. In the meantime, he remained at the Perdue home and "worried." He did not go back to work that afternoon. On prior occasions Perdue had driven Benson's car with Benson's permission, "but just to the store * * * to pick up bread or pick up something like that," and Benson was with him on those occasions.. The conversation concerning Perdue's use of the automobile on the occasion in question took place on the front porch of the Perdue home, not in the living room where Miss Delores Perdue was.

The plaintiff assigns as error the overruling of his objection to the testimony of Benson concerning his conversation with Perdue.

The court instructed the jury, in part, as follows:

> "A material deviation from the permission given constitutes a use without permission, but a slight deviation is not sufficient to exclude coverage under the omnibus clause. * * *
>
> "Now, material deviation is a substantial deviation, a deviation to such an extent that had the owner known that this was going to happen, that he was going to use the car in that fashion, that he would not have granted the permission, either expressly or impliedly, in the first instance. * * *
>
> ("Now, I instruct you, members of the jury, that if you find the facts to be in the case that Benson told Perdue that he could take his car to see if the truck was repaired, and bring the car back in time for Benson to go back to work that afternoon, then the court instructs you that there would be a material deviation by Perdue from the permission and it would be your duty to answer the issue 'No'.")

The plaintiff assigns as error the foregoing portion of the charge in parentheses, and also assigns as error the court's alleged failure to state in plain and correct manner the evidence given in the case and to declare and explain the law arising thereon with reference to the extent of the permission granted to Perdue by Benson.

*Schoch, Schoch and Schoch for plaintiff appellant.*
*Morgan, Byerly, Post & Keziah for defendant appellee.*

LAKE, J. There is no merit in the assignments of error relating to the admission and exclusion of testimony concerning the extent of the permission granted by Benson to Perdue for the use by Perdue of Benson's automobile.

The questions addressed to the plaintiff's witness, to which objections were sustained, were designed to elicit from the witness what statements she heard, or did not hear, Benson and Perdue

make to each other concerning the purpose for which Perdue was permitted to use the automobile and when he was to return it. For example, Mrs. Perdue, if permitted to answer the question, would have testified that she did not hear Benson tell Perdue when, where, how or how long Perdue could use the automobile or specify the time when Perdue was to bring it back. Such testimony was properly excluded not because of the hearsay rule, which the plaintiff, in argument, appears to consider the basis of the ruling, but because the prior testimony of this witness disclosed that she did not purport to know all that Benson and Perdue said to each other on this occasion.

Hearsay evidence consists of the offering into evidence of a statement, oral or written, made by a person other than the witness for the purpose of establishing the truth of the matter so stated. The hearsay rule does not apply to testimony that a particular statement was made by some person other than the witness when the fact sought to be established is the making of the statement itself, as distinguished from the truth of the matter so stated. *In re Will of Duke,* 241 N.C. 344, 85 S.E. 2d 332; Stansbury, North Carolina Evidence, 2d Ed., § 138; Wigmore on Evidence, 3d Ed., §§ 1766, 1770; 29 Am. Jur. 2d, Evidence, § 497. Thus, in *Hunt v. Casualty Co.,* 212 N.C. 28, 192 S.E. 843, where, as here, the question at issue was whether the driver of an automobile was, at the time of the accident, driving with the permission of the insured owner, Schenck, J., speaking for the Court, said:

> "The objection and exception to the testimony of the plaintiff's witness, Frank Coxe, as to what Richardson said to him at the time Coxe gave Richardson permission to use the automobile, upon the ground that such testimony was hearsay, cannot be sustained, since such testimony was competent to show the purpose for which Coxe permitted Richardson to use the automobile, and the terms of the bailment."

Thus, the testimony of Miss Delores Perdue, to the effect that she was in a position to hear and did hear her father ask Benson if he could use the automobile and did hear Benson reply "Okay," was competent upon the question of the grant of permission to use the car. It is equally well settled that a witness, whose testimony, if true, establishes that she was in a position to hear the entire conversation, may testify that a certain statement was not made therein. That is, a witness, shown to have been in a position to see or hear what occurred, may testify not only to what she saw and heard but also to what she did not see and did not hear. Strong, N. C. Index 2d, Evidence, § 17; Wigmore on Evidence, 3d Ed., § 664; 29 Am.

Jur. 2d, Evidence, § 258. However, such evidence is not competent unless it has first been shown that the witness was in a position to hear all that was said. As Ervin, J., speaking for the Court, said in *Ballard v. Ballard*, 230 N.C. 629, 55 S.E. 2d 316, "[A] witness cannot be allowed to testify to the nonexistence of a fact, where his situation with respect to the matter is such that the fact might well have existed without his being aware of it." Accord: *State v. Tedder*, 258 N.C. 64, 127 S.E. 2d 786; *Carruthers v. R. R.*, 215 N.C. 675, 2 S.E. 2d 878; *Johnson & Sons, Inc., v. R. R.*, 214 N.C. 484, 199 S.E. 704; Strong, N. C. Index 2d, Evidence, § 17; Wigmore on Evidence, 3d Ed., § 659.

The testimony of each of the plaintiff's witnesses established clearly the possibility that such witness did not hear the entire conversation between Benson and Perdue with reference to the grant of permission to use the automobile on this occasion. Consequently, there was no error in refusing to permit these witnesses to testify as to their failure to hear Benson impose a time limitation upon the use of the automobile.

In any event, any error committed in sustaining objections to questions propounded to Miss Delores Perdue, concerning what she heard or did not hear of the conversation, would not be the basis for a new trial. When this witness was recalled to rebut testimony of Benson on this point, she was permitted to testify to the same things which the record shows she would have said had she been permitted to answer the questions previously propounded to her. "The exclusion of testimony cannot be held prejudicial when the same witness is thereafter allowed to testify to the same import * * *" Strong, N. C. Index 2d, Appeal and Error, § 49; Accord: *In re Will of Pridgen*, 249 N.C. 509, 107 S.E. 2d 160.

Obviously, Benson was a competent witness to testify as to the statements he, himself, made to Perdue imposing limitations of time upon Perdue's permission to use the car. There was no inconsistency in the court's permitting Benson to testify as to the express limitations so placed by him upon the permission so granted by him and its refusal to permit the plaintiff's witnesses to testify that they did not hear such statement, in view of their testimony that they may not have heard the entire conversation.

The omnibus clause in the policy issued by the defendant to Benson conforms to the requirements of G.S. 20-279.21(b)(2). Under this clause, the coverage of the policy extends to the liability of a bailee of the automobile for an accident only where the bailee's use of the vehicle at the time of the accident is within the scope of the permission granted to him, the burden being upon the plaintiff to show that such use was within the scope of the permission.

*Hawley v. Insurance Co.*, 257 N.C. 381, 126 S.E. 2d 161. Of course, a permission to use an automobile may be implied, and strong social relationships and ties between the owner and the bailee are relevant upon the question of the extent of such implied permission. *Bailey v. Insurance Co,.* 265 N.C. 675, 144 S.E. 2d 898. However, proof of friendly relations, which might otherwise imply permission, cannot overcome the effect of a limitation as to time, purpose or locality expressly imposed by the owner upon the bailee at the time of the delivery of the automobile to the bailee by the owner on the occasion in question. Appleman, Insurance Law and Practice, § 4370. It is well established in this State that when the bailee deviates in a material respect from the grant of permission his use of the vehicle, while such deviation continues, is not a permitted use within the meaning of the omnibus clause of this policy. *Bailey v. Insurance Co., supra; Fehl v. Surety Co.*, 260 N.C. 440, 133 S.E. 2d 68; *Hawley v. Insurance Co., supra.*

The testimony of Benson was to the effect that Perdue, at about noon, asked for permission to use the car "for 15 or 20 minutes to run up to see if his truck was ready," and Benson told him he could use the car but "to come back at one o'clock because I had to go to work." The accident occurred ten hours after the expiration of the time limit thus expressly imposed, assuming this testimony to be true. Such disregard of the time limitation expressly imposed was a material deviation from the grant of permission. *Fehl v. Surety Co., supra.* The charge of the court below to the jury contained a fair and complete summary of the evidence and a clear and full statement of the principles of law applicable thereto upon this issue. We find no error therein.

No error.