Maria Teresa HAUSER et al., Plaintiffs-Respondents,

v.

Larry HILL et al., Defendants,

Zeuschel Equipment Company and Jack Zeuschel, Defendants-Appellants.

No. 35223.

Missouri Court of Appeals,
St. Louis District,
Division Two.

April 23, 1974.

Motion for Rehearing or to Amend Opinion, or for Transfer to Supreme Court

Denied May 14, 1974.

Application to Transfer Denied July 22, 1974.

William R. Hirsch, Clayton, for defendant Hill.

Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, John L. McMullin, St. Louis, for defendant Allstate Ins. Co.

Zeuschel Equip. Co. & Jack Zeuschel, Wuestling & James, St. Louis, for defendants-appellants.

W. W. Sleater, St. Louis, for plaintiffs-respondents.

SMITH, Presiding Judge.

Defendants-appellants appeal from a judgment entered in a court-tried case in a declaratory judgment action. The declaratory judgment was that appellants' policy of automobile liability insurance provided coverage to plaintiffs, allegedly injured in a collision with appellant Zeuschel Equipment Company's vehicle while it was being operated by that company's employee, Larry Hill.

Plaintiffs brought their action in four counts. Count I sought a declaratory judgment as to whether Hill was covered by the Zeuschel policy, and alleged that, if he was not, plaintiffs' uninsured motorist coverage issued by defendant Allstate Insurance Company would be applicable. Count II sought damages arising from the accident on behalf of Maria Hauser; Count III sought consortium damages for her husband Leslie; Count IV sought damages for injuries to Mrs. Hauser's daughter Vivian Marquez, a minor.

The declaratory judgment count was tried to the court in equity and following the judgment heretofore mentioned the remaining counts were then transferred to the assignment division for later trial in a law division.

■ We are confronted initially with plaintiffs' motion to dismiss based on the contention that the judgment is not appealable until judgment has been entered on all counts. The trial court made no order that the judgment was either final or interlocutory. Determination of the question is governed by Rule 81.06, V.A.M.R.[1] In a strict sense Count I was "related" to the other counts as all had their genesis in the automobile accident. But we do not believe the rule contemplates such a strict construction. Count I deals with a question of contract as to whether coverage is afforded Hill under the Zeuschel policy. It in no way involves the liability of Hill for tort committed against plaintiffs as the other counts do. The issues in Count I are entirely different from those in the remaining counts and the determination of Count I has no effect upon the determination of the other counts except to the extent it de-

[1] . . . . When a separate trial is had before the court without a jury of claims arising out of the same transactions, occurrences or subject matter as the other claims stated or joined in the case the judgment entered shall not be deemed a final judgment for: purposes of appeal within the meaning of Section 512.020, Revised Statutes of Missouri, unless specifically so designated by the court in the judgment entered. However, when a separate trial is had before the court without a jury of an entirely separate and independent claim unrelated to any other claims stated or joined in the case, then the judgment entered shall be deemed a final judgment for purposes of appeal . . . unless the court orders it entered as an interlocutory judgment to be held in abeyance until other claims, counterclaims or third-party claims are determined.

termines which insurance company will defend those counts. The dispute in Count I is essentially between Allstate and Zeuschel, with plaintiffs and Hill occupying the position of interested bystanders. The remaining counts involve plaintiffs' charges of tortious negligence against Hill. We conclude that the judgment on Count I was a final judgment for purposes of appeal. See Readenour v. Motors Insurance Corporation, 287 S.W.2d 135 (Mo.App.1956) [1]; Robb v. N. W. Electric Power Cooperative, 297 S.W.2d 385 (Mo.1957).

■ We turn to the merits. The case involves the continuing difficult question of permissive use of a vehicle under an omnibus clause of an automobile insurance policy.[2] Such permission may be either express or implied. Kemp v. MFA Mutual Insurance Company, 468 S.W.2d 700 (Mo.App.1971). In this case no express permission is claimed nor established. The rule on implied permission has been stated by the Supreme Court in Mazdra v. Selective Insurance Company, 398 S.W.2d 841 (Mo.1966) as:

> "In the absence of express consent to an employee to use his employer's car, an implied permission or consent extends only to its use within the scope of employment, apart from slight deviations, *unless there has been a permission to use the car generally or a course of conduct or a practice with the owner's acquiescence, reasonably indicating the employee's right to assume permission in the particular circumstances.*" (Emphasis supplied). (1. c. 844).

■ This indicates that three different situations can each warrant a conclusion of permission to drive by an employee: (1) within the scope of employment, (2) use generally or (3) conduct or practice reasonably indicating a right to assume permission. "The permission contemplated is something more than mere sufferance or tolerance without taking steps to prevent, and the term is used, rather, in the sense of leave, license or authority with power to prevent . . . ." M.F.A. Mutual Insurance Company v. Alexander, 361 S.W. 2d 171 (Mo.App.1962) [3-7].

However—"Permission has a negative, as well as an affirmative, connotation. The absence of a prohibition against an expected or foreseeable or natural use may be strongly indicative that such use is permissible." Kemp v. MFA Mutual Insurance Company, 468 S.W.2d 700 (Mo.App. 1971) [2].

■ The rules of law to be applied are not really in dispute, it is their application to the facts here (and in most implied permission cases) which presents the problem. We review court tried cases on both the law and the evidence, giving deference to the opportunity of the trial judge to determine credibility and reversing only if the judgment is clearly erroneous. We also recognize that whether implied permission exists is determined by what was actually said and done prior to the accident and is not created nor destroyed by post-accident utterances and opinions. Allstate Insurance Co. v. Hartford Accident & Indemnity Co., 486 S.W.2d 38 (Mo.App.1972) [3-6].

Hill had been employed by Zeuschel for 1½ years as order filler and delivery boy. Prior to the acquisition of the pickup truck involved in the accident, Zeuschel owned a station wagon. Hill used that vehicle to make deliveries. On occasion he would use the station wagon to go from his place of employment to his home for lunch and return. On occasion when he was making deliveries he would go home for lunch. There was no prescribed time for him to make deliveries. On occasions he would deviate from his delivery route for person-

2. The word "insured" under the policy includes " . . . any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either."

al reasons. On occasions he would use the station wagon to pick up lunch for secretaries and to run errands for men in Zeuschel's plant. Hill did not use the station wagon during non-business hours.

The keys for the pick-up truck, after it was acquired, were kept on a nail or hook. The vehicle was also used by Hill's brother, Roy, to deliver orders. Larry Hill would simply take the truck when he had a delivery to make, he would not request permission to leave. If he was on the street at the time for lunch he would "stop and get something to eat or go home and eat or wait until you got back, or whatever." On occasion he would go home with the truck to "pick something up, car parts or something, and drop them off." These were personal trips. He used the truck "quite often" to get lunch for the secretaries and other personnel of Zeuschel including "the boss". He also used the truck to get lunch for himself. Larry Hill never used the truck during non-business hours except on one occasion with permission.

The accident occurred around noon when Hill was on his way from his place of employment to his home to eat lunch. He had not asked express permission; but he had never asked express permission to use the truck during business hours. The employees had been told generally "not to use it [the truck] for our own use" but no specific instructions had been given not to use it to get lunch. This was a "personal trip" having nothing to do with Zeuschel business. Hill thought personal use meant "using the truck at night, on weekends, something of that nature, moving furniture, something like that." When Hill didn't have his car and went to lunch he would take the station wagon and Zeuschels were aware of this "in a round-about way."

Defendant Zeuschel's evidence indicated that only general oral instructions not to drive the truck for personal use were given. Zeuschel's officers were aware of the use to go home for lunch while out on deliveries and "couldn't object to that".

They were also aware and okayed that the truck was used to get lunch for "secretaries and salesmen and other people."

We conceive the question here to be whether Hill had a reasonable basis to believe he had permission to use the truck for the purpose he did under the circumstances of its previous use by him. We believe the trial court could find he did have such basis. "Personal use" is not a precise term. Defendants' vice-president testified that "lunch would be personal business." Yet that same witness was aware of the use for lunch and had no objection to such usage. The ready availability of the vehicle to Hill, his frequent use of it throughout the day, his known use for personal errands, his known use to obtain lunch for himself and for others, his prior use of the station wagon for similar purposes all indicate that the "personal use" restriction was not viewed by either Hill or his employer in a strict sense.

We believe the trial court could and did properly find that the "personal use" limitation applied to what Hill testified he believed it meant—use of the vehicle during non-working hours. Under the custom and practice of Hill's use with the owner's acquiescence and in some cases approval, and in the absence of a specific prohibition against an expected, foreseeable and natural use, Hill could reasonably assume permission to utilize the truck for the purpose he did at the time of the accident.

■■■■ Omnibus coverage provisions are intended to extend, not restrict, coverage afforded and such intention is salutary. Of course, insurance companies should not be subjected to liability for accidents which occur while the driver is using a vehicle under circumstances which approach theft. On the other hand, coverage should not be defeated where the driver has a reasonable basis to believe he is operating the vehicle within the scope of the permission, express or implied, given to him by the owner. We find the trial court was not clearly er-

roneous in finding such reasonable belief here.

Judgment affirmed.

McMILLIAN and GUNN, JJ., concur.