AUTO–OWNERS INSURANCE
COMPANY, Respondent,

v.

Donald McGAUGH, Defendant,

James E. Bowles and Betty J. Bowles,
Defendants-Appellants,

and

State Farm Fire and Casualty and State
Farm Mutual Automobile Insurance
Company, Intervenors.

No. WD 30911.

Missouri Court of Appeals,
Western District.

March 30, 1981.

Modified on May 12, 1981.

Rehearing Denied June 2, 1981.

Application to Transfer Denied
July 14, 1981.

Michael J. Maloney of Popham, Conway, Sweeny, Fremont & Bundschu, P. C., Kansas City, for defendants-appellants James & Betty Bowles.

Darwin E. Johnson & William T. Session of Linde, Thomson, Fairchild, Langworthy & Kohn of Kansas City, for respondent Auto-Owners Ins. Co.

Edward W. Mullen of Deacy & Deacy, Kansas City, for Intervenors State Farm Fire & Casualty and State Farm Mutual Automobile Ins. Co.

Before WASSERSTROM, C. J., Presiding, and SHANGLER and MANFORD, JJ.

MANFORD, Judge.

This is a proceeding for declaratory judgment for determination of coverage under three automobile liability insurance policies. The judgment denied coverage. The judgment is affirmed.

In their brief, appellants present ten points, which are condensed into three for purposes of disposition. Eight of the ten points attack the giving or the refusal to give instructions and are denominated as the third point of error in this opinion. The first two points are: (1) The trial court erred in refusing to grant appellant's motion for directed verdict because as a matter of law, the use of the vehicle was with expressed or implied consent of the insured; and (2) The trial court committed plain error by (a) permitting respondent and intervenors to proceed as parties with the burden of proof, (b) treating the named insured as a party defendant, (c) failing to distinguish the insured from other parties defendant in the instructions and (d) permitting respondent to cross-examine the insured because in this action, respondent's counsel opposed the driver's interest; but in the companion third party action, he had contemporaneously acted as counsel for the driver. In the third point of error, challenge to the instructions is taken up in detail and recital of the alleged error is set forth at that portion of the opinion.

Before considering the facts giving rise to this cause, it is necessary to identify the parties herein, which are referred to in this appeal under their trial party designation.

Auto-Owners was the original plaintiff. Donald McGaugh was the named insured of plaintiff and was an original defendant. James and Betty Bowles were the occupants in a vehicle struck by McGaugh's vehicle. John Strine was the operator of McGaugh's vehicle at the time of the collision. In addition to McGaugh, both James and Betty Bowles, along with John Strine, were joined as parties defendant. State Farm Fire and Casualty Co. and State Farm Mutual Automobile Insurance Company were both insurors of the defendant John Strine and were permitted to intervene.

Plaintiff sought declaratory judgment to determine its liability under the *omnibus clause* of its policy issued to defendant McGaugh. Intervenors sought declaratory judgment to determine their liability under the *non-owned vehicle clauses* of their policies issued to defendant Strine. Defendants James and Betty Bowles sought and secured judgment for their damages against defendant Strine. In the instant proceedings, the issue of permissive use was the only issue submitted to the jury, and the jury found in favor of all three respondent insurors. This appeal followed.

Donald McGaugh was an over-the-road truck driver who owned his own truck and worked out of the Tri-State Terminal. John Strine was employed by Tri-State Terminal. On January 7, 1977, McGaugh drove his automobile (a Monte Carlo) to Tri-State because his truck was in the shop for maintenance and repair. During the day, another driver took McGaugh to pick up his truck. McGaugh returned to the terminal. McGaugh was to leave for Minneapolis that same evening, planning and expecting to be there by 8:00 a. m. the following morning.

Because of the foregoing events, McGaugh then had, at the terminal, his truck and automobile. A discussion took place between McGaugh and Strine concerning Strine's driving the automobile to McGaugh's brother's place of business. Since the evidence is disputed as to what was discussed between these two men concerning the automobile, and because the major issue on this appeal turns upon that evidence, specific reference is made hereto.

McGaugh testified that at about 4:00–4:30 p. m., he and Strine decided that Strine "would bring my car up to Riverside and I was to meet him up there at Riverside and if he had to go home, I said either I or my nephew would take you home." McGaugh further testified that the location in Riverside was that of his brother's place of business known as Fleet-Mate. In addition, McGaugh testified that Strine was, by his employment with Tri-State, involved in checking departing trucks and would have known McGaugh was leaving for Minneapo-

lis that evening. McGaugh stated that Strine was aware the brother and sister-in-law of McGaugh had need of McGaugh's automobile for the coming weekend while McGaugh was out of town.

During the same afternoon, it developed that other drivers had to take trucks to the White Motor Company and needed return transportation to Tri-State Terminal. McGaugh and Strine discussed and agreed that Strine would pick up these other drivers, return them to Tri-State and then proceed to Riverside. McGaugh testified that a trip from White Motor Company to Tri-State to Riverside should not take too long and when McGaugh and Strine separated, McGaugh declared to Strine, "I'll see you in Riverside in about an hour."

McGaugh left the terminal around 5:00 p. m., arriving at Fleet-Mate in Riverside around 5:30–5:45 p. m. He waited for Strine until 9:30 p. m., when at such time he left for Minneapolis. McGaugh testified that he had never previously loaned his automobile to Strine, and that their contact was only intermittent through their respective employment relationship with Tri-State Terminal. McGaugh did testify that on one prior occasion, he had been in the Jockey Club (a barroom across from Fleet-Mate in Riverside) with Strine. There was no other evidence by McGaugh of any other social activity or past social conduct between him and Strine. McGaugh further testified that he had never mentioned Strine could deliver the automobile the next day or that Strine could use the automobile for any other purpose.

At approximately 7:50 p. m. that same evening, the police responded to a call at 4000 North Oak Trafficway, where Strine, while operating McGaugh's automobile, had struck the vehicle owned and occupied by James & Betty Bowles. The location of the collision was fixed as one and three-tenths miles north of the road division, which, if a driver were to turn left at the road division, he would be driving on the road which led to Riverside. That is, a left turn at the road's division would lead to Riverside, while a turn to the right would lead to North Oak Trafficway.

The investigating officer at the scene of the accident asked Strine where he was going, and Strine responded that "he was going nowhere".

Another witness testified he was one of the drivers who secured a ride with Strine from White Motor Company to Tri-State. This witness also testified that on prior occasions, Strine, McGaugh and himself drank beers together in the Jockey Club.

Strine then testified that his memory of his conversation with McGaugh was as follows: "I was going to take his car that night, after I got off work, and he wanted me to take it to Riverside and I asked him * * * I said * * * well, I don't know whether I came out and asked him, I said, 'Is it okay for it to be there by tomorrow morning', and he said yeah, there was no really set time, and so I mentioned to him I might just go pick up my wife at home and have her follow me to Riverside in case that * * like he was gone, or his nephew * * * his brother and sister-in-law, and there just * * there really wasn't no comment, yes, no, or * * * it was just kind of left like that, that it wouldn't make any * * * it didn't make any difference."

Strine admitted that he knew McGaugh was going to Fleet-Mate in Riverside, but thought he was going to pick up some gear for his truck. Strine further testified that upon leaving, all he heard McGaugh say was, "I'll see you" or words to that effect.

Strine stated he was en route to pick up his wife at the time of the collision, that he was going to deliver McGaugh's automobile to Riverside and that his wife (Strine's) would drive him to their home. Strine further testified it would have taken approximately 30 minutes to drive from Tri-State to Riverside, but said he stopped at some bars and had some drinks.

When Betty and James Bowles filed their action against Strine, they made demand upon Auto-Owners for coverage under the *omnibus clause* of McGaugh's policy. Following such action, Auto-Owners alleged that Strine was making use of McGaugh's automobile beyond the scope of permission granted by McGaugh. Intervenors, insurors of Strine, joined the proceedings, seeking judgment of noncoverage under the *non-owned vehicle clauses* of their policies. The only question submitted to the jury was permission and the jury returned a finding in favor of all three insurors.

At this juncture, it would be well to set forth the pertinent portions of the disputed policy clauses:

*Auto-Owners Policy*

"III Definitions

A. 'Insured' shall mean:

(1) Wherever used in Coverages A and B and in other parts of this policy when applicable to these coverages, the named insured and any person using the automobile and any person or organization legally responsible for its use, *provided the actual use thereof is with the permission of the named insured* or if the named insured is an individual, with the permission of an adult member of the household who is not a chauffeur or domestic servant * * *" (emphasis added)

*State Farm Policies*

"Use of Non-Owned Automobiles * * * PROVIDED SUCH USE, OPERATION OR OCCUPANCY IS WITH THE *PERMISSION* OF THE OWNER OR PERSON IN LAWFUL POSSESSION OF SUCH AUTOMOBILE *AND IS WITHIN THE SCOPE OF SUCH PERMISSION.* The definition of insured does not apply to Use of Non-Owned Automobiles." (emphasis added)

Against the foregoing factual background and referenced policy provisions, attention is now directed to appellants' first point. Appellants argue they were entitled to a directed verdict because uncontested facts demonstrated that Strine's operation and use of McGaugh's vehicle was within the expressed or implied permission of McGaugh.

Appellants' narrow assessment of the evidence is an effort to limit an issue which they claim should have never been submitted to the jury. Appellants urge that the only issue formed by the evidence was

resolved by the fact that Strine had the expressed or implied permission to use McGaugh's vehicle.

As the evidence establishes, however, this is not a case of permission but one dealing with the scope of permission. The evidence shows that McGaugh granted Strine express permission to pick up the other drivers, return them to Tri-State and proceed to Riverside. Strine's own testimony addresses this issue.

Appellants' argument, in support of their first alleged error, is broad-based and links their presumption that critical facts are undisputed with a plea for the liberal construction of insurance policies so as to effectuate the public policy to encourage the procurement of insurance. From the outset, appellants argue that the relationship of McGaugh and Strine was nonbusiness and hence, social in nature. The evidence bears out the nonbusiness contention of appellants since there was no master-servant relationship existing. However, the evidence does not support, as a matter of law, the conclusion that the relationship was social. Strine was an employee of Tri-State. McGaugh was an independent over-the-road driver who made use of the terminal upon arrival and departure. During the period of a few months, their contact was intermittent with intervals of three to six weeks separating such contact. There was no evidence that Strine had ever made use of the McGaugh automobile at any prior time.

Appellants assume a close social relationship between McGaugh and Strine to add further support to their argument that there was in this case, implied permission as to the use of the McGaugh automobile.

The direct focus of this case is the consideration of an *omnibus clause* and a *non-owned vehicle clause* within three insurance policies. There is little dispute concerning the proposition that an *omnibus clause* extends coverage beyond that of only the policy holder. There is, however, a minority view which adopts a different rule of interpretation to be applied to non-owned vehicle clauses because the latter do not increase the risk to the insuror. See *Maryland Casualty Company v. Hassell*, 426 S.W.2d 133 (Ky.App. 1967). The fact remains, however, that our courts must not provide interpretation of language within insurance policies which ignore the very language contained therein.

Consideration of either type clause initially raises two questions which must be answered. First, was there permission extended to the operator of the vehicle? Second, what was the extent or scope of such permission? The consideration of the first question entails reference to the alternative forms of permission which are found, that is, permission either expressed or implied. Expressed permission, for obvious reasons, has provoked limited legal debate. It is the matter of implied permission which has given impetus to a large segment of the caselaw and from which well-defined principles or rules of law have emerged.

Implied permission, as that term relates to insurance coverage, has been generally defined as " * * * Permission or consent need not be expressly given, but, in the absence of express prohibition, may be implied, as from the relationship of the parties, or a course of conduct in which they have mutually acquiesced, or even by silence. An implied consent must have the element of mutuality and must arise by way of inference or deduction from the acts and conduct of both parties," 45 C.J.S. *Insurance* § 829 (1946). From this general definition, our courts have declared that implied permission "usually does arise from a course of conduct of the parties over a period of time prior to the use in question," see *Bourne v. Manley*, 435 S.W.2d 420, 427 (Mo.App. 1968).

Appellants argue this to be a case of implied permission, but the evidence does not support such a conclusion. The argument is advanced for the precise purpose of persuading this court to adopt a more liberal rule related to the interpretation of insurance policy clauses.

As has been indicated, the evidence herein establishes an expressed permission

by McGaugh to Strine for the use of the automobile. That is, Strine was to deliver the automobile to Riverside. The real issue was the scope of permission, and this brings us to question number two above. In the consideration of the question, three discernible rules come into focus. The first such rule is the so-called "strict" or conversion rule. This rule arises from the principle that if the driver (bailee) would be liable to the owner of the vehicle upon an action for conversion, then the driver has exceeded the scope of permission given and no coverage is afforded under the owner's policy. The "strict" or conversion rule mandates that the *use* must have been intended by the parties. This rule rests upon the theory that conversion and permission cannot coexist.

■ Another rule is the so-called "initial permission rule" or the "hell-or-high-water" rule. This rule, being the most liberal of the three rules, permits coverage once the owner's permission is given and any use of the vehicle is considered to be with the permission of the owner. This rule rests upon the concept that an insurance policy is as much for the benefit of the public as it is for the parties. It is for the adoption of this rule that appellants argue from a position of implied permission.

■ The third and so-called "middle ground rule" and the rule followed in our own state is the "minor deviation rule". This rule holds that where a deviation from intended use is only a minor one, the deviation will be considered immaterial and coverage will be afforded. For an in-depth analysis of the three rules, see 5 A.L.R.2d 600 (1949) and 7 Appleman, Insurance Law and Practice, §§ 4366–4367 (1962).

The "minor deviation rule" was first adopted in *Speidel v. Kellum*, 340 S.W.2d 200 (Mo.App. 1960) and was applied to an employee operating the employer's vehicle. An analysis of the case indicates the court analogized the use of the vehicle to that of the scope of employment. Shortly following *Speidel*, our courts handed down the decision in *Winterton v. VanZant*, 351 S.W.2d 696 (Mo. 1961). *Winterton* stated

that since the parties (unlike in *Speidel*) stood in a nonbusiness social relationship, the rule in *Speidel* did not apply and a more general permission would be presumed. There followed a third decision with a factual situation (relative to the relationship of the parties) similar to the relationship between McGaugh and Strine. In *Kemp v. M.F.A. Mutual Insurance Co.*, 468 S.W.2d 700 (Mo.App. 1971), the court held that since the parties were neither employer/employee, nor within a strictly friend-type relationship, permission was easier to find. The court thus ruled in *Kemp* that the use "was within the contemplation of the parties at the time the operation of the vehicle was originally entrusted to Bruener." *Kemp* at 706.

In conjunction with their argument for the adoption of the initial permission rule, appellants argue this case to be within the principles of *Winterton* and *Kemp*. Appellants urge that since McGaugh and Strine were not in an employer/employee relationship, their status being one of a nonbusiness social relationship, this court must find that *Winterton* and *Kemp* control. Following the three decisions above, however, our courts have spoken to the issue more precisely. In 1979, it was again stated that Missouri follows the "minor deviation rule" and in the decision of *Truck Insurance Exchange v. Hunt*, 590 S.W.2d 425, 429 (Mo. App. 1979), the court, in citing *Wilson v. Hartford Accident & Indemnity Co.*, 272 N.C. 183, 158 S.E.2d 1, 7 (1967) and *Savage v. American Mutual Liability Insurance Co.*, 158 Me. 259, 182 A.2d 669 (1962) implied that the minor deviation rule should be applied in business or nonbusiness relationships. The two authorities cited in *Truck Insurance Exchange* were social situations and reasoned that "*proof of friendly relations, which might otherwise imply permission, cannot overcome the effect of a limitation as to time, purpose or locality expressly imposed by the owner upon the bailee at the time of the delivery of the automobile to the bailee by the owner on the occasion in question.*" (emphasis added) *Wilson v. Hartford Accident & Indemnity Co.*, 158 S.E.2d at 7.

It should be noted that *Truck Insurance Exchange* is found not to be controlling herein upon its own facts because it dealt with a relationship which, under the facts of the case, permitted the user the indefinite and unrestricted use of the automobile in question. The case is cited for reference to the "minor deviation rule" and the implication that the "minor deviation rule" is to be applied in both *business* and *nonbusiness* relationships. For further reference in making no distinction between employer/employee and "other bailees" concerning the application of the "minor deviation rule", see 7 Am.Jur.2d *Automobile Insurance* § 266 (1980).

As a further note regarding the refusal to adopt the more liberal "initial permission rule", see *United States Fidelity & Guaranty Co. v. Safeco Insurance Company of America*, 522 S.W.2d 809 (Mo.banc 1975) where at 812, our State Supreme Court, in a social relationship case, declared that "the trend of the times is for people to be compensated for automobile accidents and the omnibus clause, therefore, should be broadened accordingly when a question of its coverage arrives," and further, "the existence of safety responsibility acts and uninsured motorists statutes are said to work a broadening of coverage." The court nevertheless determined that coverage is to be made "within the terms of the omnibus clause as it is written in the policy before us."

It should be noted that the cited authorities address the question involving omnibus clauses. That, of course, would address the matter as it relates to the Auto-Owners policy, but what of the non-owned clauses found within the two remaining policies? There is one state which distinguishes between the omnibus clause and the non-owned clause, applying the minor deviation rule in the former, but applying the initial permission rule to the latter. The basis for such application is the theory that in cases involving the *non-owned clauses*, the insuror has insured the person driving the vehicle and by virtue thereof, the risks are not extended or enlarged. *Maryland Casualty Company v. Hassell, supra*, at 138. While

*Safeco* tracks the history of the non-owned clauses and concludes that permission was added to prevent coverage in theft cases, the fact remains that *Safeco* also speaks to the determination of coverage within the language of the policy. In the instant case, the non-owned clause contains specific language of limitation. The pertinent portion of that clause reads, " * * * *is within the scope of such permission* * * * "

■ In further support of their argument, appellants contend the policy of Auto-Owners falls within the Safety Responsibility Law of the state of Missouri, § 303.190.2(2). They argue that the Auto-Owners policy, by its very language, mandates that said policy is to comply with the safety responsibility law. Appellants reference the following from said policy:

"20. FINANCIAL RESPONSIBILITY LAWS; COMPULSORY INSURANCE LAWS. Such insurance as is afforded by this policy under coverages A and B shall comply with the provisions of the Motor Vehicle Financial Responsibility Law of any state . . ."

From the foregoing, appellants argue that if the following language is not given effect within the omnibus clause, said clause is in compliance with the Safety Responsibility Act. The pertinent language from this clause is " * * * provided the actual use thereof is with the permission of the named insured."

In support of their argument that the omnibus clause mandates compliance with the Safety Responsibility Act, and further that the above quoted portion of that clause is to be given no effect, the appellants cite *Weathers v. Royal Indemnity Co.*, 577 S.W.2d 623 (Mo.banc 1979). Under *Winterton* and *Weathers, supra*, appellants' argument that said clause is within or in compliance with the Safety Responsibility Act is correct. However, the remainder of appellants' argument must fail as that argument relates to the exclusion of the above-stated portion of that clause.

*Weathers v. Royal Indemnity Co., supra,* at 627 n. 8 discusses the terms "use" and "actual use" in omnibus clauses. In this footnote, the court stated that *Allstate Ins. Co. v. Hartford Accident & Indemnity Co.,* 486 S.W.2d 38, 43–44 n. 5 (Mo.App. 1972) provided "a pertinent discussion of the terms 'use' and 'actual use' in omnibus clauses." It went on to say that " 'some courts have thought that any attempt "to place different meanings on the two terms ['use' and 'actual use'] creates a distinction without a difference * * * " ' " [citing cases] This court concludes that this is a proper disposition of the question regarding the two terms. Further, appellants overlook the fact in their argument that our courts look to whether or not the evidence supports a finding by the trier of fact on the issue of use. See *Winterton, supra.* While appellants argue correctly that the Auto-Owners policy is within the Safety Responsibility Laws, it does not follow that the term "actual use" is not to be given effect. See *Weathers, supra.*

■ In furthering their argument, appellants contend that if the minor deviation rule is the law in our state, then the trial court should have ruled that Strine's deviation was minor as a matter of law. This contention is premised upon the fact that the location of the collision (1.3 miles from the intended destination) and the two hour diversion constituted a *minor* and not a *major* deviation. Appellants misconstrue the intent of the matter of deviation and the determination of whether or not it was *minor* or *major.* The determination relates to the purpose inherent in the permission granted, the scope of that permission and not solely to the matter of geographical location or timing.

For the reasons set forth herein, appellants were not entitled to a directed verdict and point (1) is ruled against appellants.

In their second point, appellants charge plain error by the trial court in four distinct ways: (a) by permitting respondent and intervenor to proceed as the parties with the burden of proof; (b) by treating the named insured as a party defendant; (c) by failing to distinguish the insured from other parties defendant in the court's instructions; and (d) by permitting respondent to cross-examine the insured because in this action respondent's counsel opposed the driver's interest but in the companion third party action, he had contemporaneously acted as counsel for the driver.

Appellants request review of this alleged error pursuant to Rule 84.13(c).

■ In their point (2)(a), appellants argue error in permitting respondent and intervenor to proceed as the parties with the burden of proof. It must be kept in mind that this was an action for declaratory judgment whereby respondent and intervenor sought determination of their liability pursuant to their issued policies. The general rule in such case situations is that the burden of proof remains the same as in other type actions, see Long, Rowland H., *The Law of Liability Insurance* § 26.21(3) (1979).

Under our own state authorities, the burden of proving coverage is upon the person seeking coverage. *Hartford Accident & Indemnity Co. v. Shaw,* 273 F.2d 133 (8th Cir. 1959). As applied to the instant case, *Shaw* places that burden upon the defendants. See also *MFA Mutual Insurance Co. v. Quinn,* 259 S.W.2d 854 (Mo.App. 1953) and *State Farm Mutual Automobile Insurance Co. v. Johnson,* 586 S.W.2d 47 (Mo.App. 1979), both of which hold that the burden of proof rests where it would had another form of action been instituted. That the insuror, as plaintiff, bears the burden of proving nonliability by application of an exclusion, see *State Farm Mutual Automobile Insurance Co. v. Johnson, supra,* and *Michigan Mutual Liability Co. v. Stallings,* 523 S.W.2d 539 (Mo.App. 1975).

The instant case provides that situation where appellants and the remaining defendants sought coverage under the policies, and under *Shaw,* the burden of proof rested upon those parties.

In the instant case, McGaugh was properly named as a party defendant since he filed his answer to the petition of Auto-

Owners denying that Strine did not have permission, and prayed that judgment be entered requiring Auto-Owners to defend him from any liability and to pay any damages in accord with any judgment entered. The net effect of McGaugh's answer was a request for coverage, placing on him the burden of proving coverage.

■ Appellants allege inherent injustice in permitting respondent to go first with its evidence, thus permitting respondent the advantage of being plaintiffs without any burden attending to a party in the role of plaintiff. It must be remembered that the only issue of fact was *permission*, and since coverage was asserted by defendants, they bore the burden of proof. In such cases, a defendant will generally have the right to open and close a case. For the general rule, see 88 C.J.S. Trial § 43 a. b. (1955). Such matters are matters of trial practice which fall within the discretion of the trial court. Absent an abuse of this discretion, such procedure will not be disturbed. *Aronson v. Hercules Life Insurance Company*, 131 S.W.2d 852 (Mo.App. 1939). As the court observed in *Hill v. Connecticut Mutual Insurance Company of Hartford*, 235 Mo.App. 752, 146 S.W.2d 651, 661 (1941): "Where it cannot be seen that a party was prejudiced in being denied the right to open and close, the ruling of the trial court will not be disturbed." That substantial injury must be suffered for a party to be so prejudiced, see *Weller v. Weaver*, 231 Mo.App. 400, 100 S.W.2d 594 (1937).

■ There is no showing that appellants (and attending defendants) suffered any prejudice by the action of the trial court in permitting respondents to proceed in the manner permitted upon trial, nor was any prejudice created by treating the named insured as a party defendant. Hence, no plain error or manifest injustice was created and appellants' point (2)(a) and (b) is ruled against them.

■ The remainder of appellants' second point, (c) and (d), is likewise without merit. As will be readily observed, there was nothing inherently prejudicial or unfair in the court's instructions and there was no necessity to distinguish McGaugh (the insured) from the remaining parties defendant. Further, no manifest injustice resulted from the fact that respondent's counsel both cross-examined the insured at trial and contemporaneously acted as counsel for Strine during the companion third party action. The record reveals this very matter was discussed at trial and while Auto-Owners admitted that it represented Strine, Auto-Owners advised Strine to secure counsel for the declaratory judgment proceedings. Appellants' claim of inherent unfairness stems from the obvious fact that Auto-Owners knew about Strine's background relative to drinking and previous injuries. Appellants' claim must fail for two reasons. First, the particular background information on Strine was a matter falling within the discovery process and by its nature being in the possession of Auto-Owners, did not create an inherent injustice. Secondly, the issue was permission and the scope of permission regarding the use of the McGaugh vehicle. The matter of Strine's previous injuries and drinking had no relevancy to the issue submitted to the trier of fact.

Point (2)(a), (b), (c) and (d) thereof is ruled against appellants since the record fails to yield commission of plain error by the trial court.

Appellants finally attack the giving and refusing to give certain instructions by the trial court. As referenced above, this final error is the consolidation of eight individual points presented in appellants' brief. Since the numerous alleged errors all relate to instructions, they have been taken up as one alleged error for purposes of disposition herein.

■ Appellants' first argument attacks the giving of the burden of proof instruction (no. 2), since it placed the burden of proof on appellants and remaining defendants. Further argument is made that the court committed error in the alignment of McGaugh with the remaining defendants, and that it was unfair to permit respondents to proceed first and receive the bene-

fits as plaintiffs without corresponding or attending burdens. It suffices to state without further declaration within the opinion that this same argument was addressed in appellants' point (2) and under *Shaw, supra; MFA Mutual Insurance Company v. Quinn, supra; State Farm Mutual Automobile Insurance Co. v. Johnson, supra*; and *Hill, Weller* and *Aronson, supra*, and is found to be without merit.

■ In further attack upon the trial court's action regarding instructions, appellants assert error in the refusal to give their requested instruction "B". In substance, this instruction would have directed the jury to determine whether Strine had the permission of McGaugh to use the latter's automobile at the time of the collision and that Strine (at the time of the accident) had a reasonable basis to believe he was using McGaugh's automobile within the scope of permission given him by McGaugh.

Appellants urge that the failure to give said instruction was error, and in support of such allegation, refer the court to *Hauser v. Hill*, 510 S.W.2d 765 (Mo.App. 1974). *Hauser* is not controlling authority for such an instruction in the instant case. *Hauser* was a case involving an employer/employee relationship wherein the employee had made frequent personal use of the employer's vehicle in addition to an expressed business use. The *Hauser* court, in addressing implied permission, held that implied permission extends only to a use within the scope of employment unless the employee has been given permission to use the vehicle generally or unless his conduct reasonably indicates he has the right to assume he has permission. In *Hauser*, the court, under the evidence which showed (1) that the employee on occasion would go from his place of employment to his home for lunch by use of the employer's vehicle, (2) that the employee was a deliveryman with no prescribed time to make deliveries and (3) that the employee made use of the employer's vehicle for other personal business, concluded that the evidence supported a reasonable belief the employee had permission to use the vehicle. The evidence in the instant case does not show past or prior conduct between the parties relative to the use of the vehicle. As has been seen in nonbusiness relationships, a more liberal recognition of implied permission arises, but even in such nonbusiness or social relationships, there must be some evidence to support the implied permission. The record herein does not support such a contention. It was not error to refuse the giving of instruction "B" in the form offered.

In the concluding phase of their final alleged error, appellants attack the giving of instructions 3, 4, 5, 6, 7 and 8.

Instructions 3 and 5 are verdict directors and are the converse of one another relating to Auto-Owners as plaintiff and the defendants. The language employed in the instructions mirrors the language of the Auto-Owners policy related to the actual use of the vehicle with the permission of the owner.

Instructions 4 and 6 are verdict directors and are the converse of one another relating to State Farm as intervenor and the defendants. The language employed in the instructions mirrors the language of the State Farm policies related to the use of the vehicle within the scope of permission give by McGaugh.

■ Appellants argue that instructions 3, 4, 5 and 6 are too restrictive and there is a need to liberalize the rules addressing nonbusiness social relationships regarding the use of vehicles. As has been pointed out, the evidence herein does not lend itself to support a change in the current rule on use. Appellants' challenge to instructions 3, 4, 5 and 6 is found to be without merit.

Appellants continue by attacking instruction no. 7. Appellants argue that instruction no. 7 is too restrictive regarding the definition of use. Appellants argue they were prejudiced by instruction no. 7 because it did not permit the jury to consider the minor deviation rule. They also contend that the definition of actual use excluded consideration of Strine's evidence as user, preventing the jury from considering said evidence.

In making these arguments, appellants overlook instruction no. 8, which in fact includes the minor deviation rule. The very thing appellants claim is lacking in instruction no. 7 is included for the jury in instruction no. 8. In addition, the submission of instruction no. 7 was not error upon its failure to include reference to Strine's evidence, because Strine's vague and contradictory testimony did not rise to the level of a submissible issue to warrant its inclusion within the wording of no. 7.

Strine was given permission to use the McGaugh automobile. The evidence upon the record supports an expressed permission as opposed to an implied permission. The real issue in the instant case was the scope of permission. In other words, as has been seen the "minor deviation rule" is the law of our state. The jury was left the task of determining whether Strine's acts of stopping at some bars and having a few drinks was within the scope of permission as well as whether Strine's activities amounted to a minor or a major deviation. Appellants' argument attacking instruction no. 7 urging reversal is found to be without merit.

Appellants' attack on instruction no. 8 is likewise premised on its being too restrictive. Whatever error may have otherwise resulted from the submission of instruction no. 8 was rendered harmless by the lack of substantial evidence that Strine understood the permission to use the car was other than as the defendant testified.

It cannot be concluded under the evidence herein that the instructions, when considered together, misled the jury, and it is hereby found that appellants' final point is without merit.

For the reasons set forth herein, the judgment is in all respects affirmed.

All concur.