MARYLAND CASUALTY COMPANY,
Appellant,

v.

Mattie HASSELL, Charles E. Jones, Phoenix
Assurance Company of New York, and
Elmer Moore, Appellees.

MARYLAND CASUALTY COMPANY,
Appellant,

v.

Elmer MOORE, and Phoenix Assurance Company of New York, Appellees.

PHOENIX ASSURANCE COMPANY OF
NEW YORK, Appellant,

v.

Mattie HASSELL, Charles E. Jones, Maryland Casualty Company, and Elmer Moore, Appellees.

PHOENIX ASSURANCE COMPANY OF
NEW YORK, Appellant,

v.

Elmer MOORE, and Maryland Casualty
Company, Appellees.

Court of Appeals of Kentucky.

Dec. 15, 1967.

Rehearing Denied April 26, 1968.

**134**

John P. Sandidge, Woodward, Hobson & Fulton, Louisville, for Maryland Cas. Co.

John A. McCrea, Louisville, for Mattie Hassell.

John L. Harbolt, Hargadon, Hargadon, Lenihan & Harbolt, Louisville, for Elmer Moore.

C. M. Leibson, Leibson & Leibson, Louisville, for Charles E. Jones.

Henry D. Hopson, Hamilton, Hopson & Hamilton, Louisville, for Phoenix Assurance Co.

PALMORE, Judge.

On Sunday, December 23, 1962, Elmer Moore had an automobile accident while driving a Ford Falcon station wagon owned by his employer, Simmonds Women's Apparel (hereinafter Simmonds), a retail clothing establishment. Two guest passengers riding with Moore were injured and brought suit against him for their damages. Both Phoenix Assurance Company of New York (hereinafter Phoenix), which had issued a liability insurance policy to Simmonds covering its station wagon, and Maryland Casualty Company (hereinafter Maryland), which had issued a similar policy to Moore covering a Buick automobile owned by him, refused to defend against the claims. One of the passengers got judgment for $6,000, the other for $3,500, and Moore incurred attorney's fees and costs aggregating $1,218.60. Executions issued against Moore were returned nulla bona, whereupon by supplemental proceedings he and the two passengers asserted claims against Phoenix and Maryland for these amounts. Phoenix and Maryland appeal from a judgment which in substance holds them jointly and severally liable on all three of the claims and requires Phoenix to indemnify Maryland.

The omnibus clause of Phoenix's policy covers anyone using the Simmonds vehicle "provided the actual use of the automobile is by the named insured or [his] spouse or with the permission of either." Maryland's policy covers Moore while using a non-owned vehicle "provided the actual use thereof is with the permission of the owner," and in that situation applies only as "excess insurance over any other valid and collectible insurance."

The principal issue in the case is the factual question of whether at the time of the accident Moore was using the station wagon with the "permission" of Simmonds within the meaning of that term as used in either or both of the insurance contracts. It is conceded that such permission may be ex-

press or implied. A jury answered "Yes" to the following interrogatory:

"Do you believe from the evidence that at the time the accident occurred * * Elmer Moore was operating the station wagon belonging to Simmonds Wearing Apparel with the express or implied permission of Simmonds Wearing Apparel?

" 'Permission,' within the meaning of the provisions of the insurance contracts involved in these actions, is not limited to that expressly granted, but may arise and be implied from circumstances. The use of the Simmonds Station Wagon outside of the Simmonds employment can not be implied unless there had been permission to use the station wagon, or a course of conduct or a practice with the knowledge and acquiescence of the owner such as would indicate to a reasonable mind that the employee, Elmer Moore, had the right to assume permission under the circumstances."

The insurance companies contend they were entitled to a directed verdict, so the main question here is whether the evidence was sufficient to support the verdict. In reaching the answer this court must, of course, accept the evidence from the standpoint most favorable to the plaintiffs. Lever Bros. Co. v. Stapleton, 313 Ky. 837, 233 S.W.2d 1002, 1004 (1950).

At the time of the accident Moore was about 50 years of age and had been employed by Simmonds for nine months. His job was to keep the premises clean, help decorate the windows, and do all of the delivering. The station wagon was used for the deliveries and usually was left overnight in a parking area next to the Simmonds store building. However, the store was located near Bardstown Road and Douglass Boulevard, in the east part of Louisville, and Moore lived on 28th Street, several miles away in the western portion of the city, and occasionally Moore would drive home in the station wagon and keep it over-

night or over the week-end until he returned to work. This happened some 30 times during the nine months of his employment with Simmonds prior to the accident. Though flatly denied by the Simmonds witnesses, suffice it to say that the evidence amply justified the jury's believing that the management must have been aware of and tacitly acquiesced in this practice.

On Saturday, December 22, 1962, Moore had a late afternoon delivery to make in the West End, so he took the station wagon on to his home afterward. On Sunday, the next day, though he had an automobile of his own, he used the station wagon to take his girl friend out to LaGrange, some 30 miles away, to visit the girl friend's brother. It was on the trip back to Louisville that the accident occurred and the two passengers were injured.

There was no evidence of any actual knowledge by the Simmonds management that Moore ever had used the station wagon for purposes other than traveling to and from work except for one instance. On or about October 1, 1962, after he had taken it for the night he was arrested for "drunk driving" in Shively, a suburban city just south of Louisville, and the station wagon was temporarily impounded. Simmonds learned of the incident on the next day, and the manager testified that he warned Moore he would be fired "if he ever did that again." Moore's version of this conversation was that it took place about three weeks after the incident and he was told "if I got drunk again and got arrested in the station wagon again they were going to fire me." As it developed, he actually was discharged immediately after the accident out of which the instant litigation arose.

Had the accident happened in the course of Moore's driving to or from his work there would not be any argument about this case. The problem is whether implied permission to take and keep the car until the next working day kept the insurance policies in force while Moore was using it for a private purpose other than transportation

between his house and some place where his employer's business required him to be. In other words, what was the scope of the implied permission?

Phoenix and Maryland contend that implied permission for Moore to use the vehicle "to go back and forth to work would certainly not extend to permit its use for a trip on Sunday to LaGrange, some thirty miles from Louisville." It is their view of the law in this state that while minor deviations do not exceed the scope of the permission, material deviations do, and that this was a material deviation. They cite United States Fidelity & Guaranty Co. v. Hall, 237 Ky. 393, 35 S.W.2d 550 (1931), and United States Fidelity & Guaranty Co. v. Brann, 297 Ky. 381, 180 S.W.2d 102 (1944).

In the *Hall* case the owner gave her son express permission to take her car downtown to a hotel in Louisville to see a friend on business, and she asked him to return by 8:00 or 8:30 P.M. and take her to the home of a sister-in-law. After completing his business the son took two other men and some girls to a place of entertainment outside the city, where they stayed until after 1:00 A.M. On the return trip they had an accident. A judgment holding as a matter of law that the omnibus clause of the owner's policy covered the son's operation of the car at the time and place of the accident was affirmed. However, the opinion does not help in this case, because the son was an adult member of the owner's household and the omnibus clause expressly extended to any person driving the car "with the permission of an adult member of the named Assured's household other than a chauffeur or a domestic servant." So, reasoned the court, if by his own permission the son could extend the protection of the policy to someone else, surely he did not need permission from the owner to be covered himself.

In the *Brann* case a young man who worked for a grocer as a delivery man, and who had a close relationship with the grocer and his wife, was asked by the grocer on a Sunday morning to take the delivery truck and gather up a group of young men for a Sunday School class taught by the grocer. The young man complied, after which he returned the truck to the garage where it usually was kept. However, instead of hanging the truck keys back up where they belonged at the store, he kept them in his pocket. In the afternoon, after the grocer and his family had gone somewhere else in their passenger car, the delivery boy took the truck and went joyriding with some of his friends, in the course of which he had a collision with another vehicle and injured its occupants. He was insolvent, and after obtaining judgments against him the injured parties sought recovery from the grocer's insurer under the omnibus clause. A judgment entered in their favor on a verdict based on implied permission was reversed.

There was no evidence in *Brann* that the delivery boy had ever used the truck without the express permission of its owner. His possession of the truck at the time and place of the accident did not originate from and therefore was in no sense a "deviation" from a permitted use. At the time he took possession of the truck during the absence and without the knowledge of the owner he had no permission whatever, express or implied, and that is the basis on which this court held the evidence insufficient to support the verdict.

In Scott v. Massachusetts Bonding & Insurance Company, Ky., 273 S.W.2d 350 (1954), the omnibus clause of a policy issued to Pike County and covering its motor vehicles was held inapplicable to a situation in which a truck driver who had been instructed to spread gravel on two county roads used the truck to deliver gravel to a private party on another road and, in so doing, allowed a 15-year-old boy to drive it. Pointing out that the truck had been classified in the policy as "commercial," the court commented that "a general permission, or a comprehensive permission, is much more readily to be assumed where the use of the motor vehicle is for social or non-business purposes than where the relationship of master and servant exists and the employ-

ment of the motor vehicle is for business purposes." 273 S.W.2d at p. 352.

In Vezolles v. Home Indemnity Co., New York, 38 F.Supp. 455 (W.D.Ky.1941) (aff'd, 128 F.2d 257), a young man named Ruemmele and his girl friend visited until 2:30 or 3:00 o'clock in the morning with another young couple named Morton. Ruemmele had no transportation of his own and had borrowed Morton's car to pick up the girl friend. When the party broke up Morton let Ruemmele use the car to take the young lady home, telling him to return to Morton's house so that Morton might then take him home. When Ruemmele arrived back at the Morton home the Mortons had retired, the house was locked, and he could not arouse them, so he took the car and went to a cafe located four blocks beyond the street on which he lived. There he met another friend, and they decided to take a ride before going home. They drove still farther away from the vicinity of Ruemmele's residence, perhaps a mile, and were continuing away when the car ran over a pedestrian. The pedestrian obtained a judgment against Ruemmele which proved to be uncollectible, so she sued Morton's insurer under the omnibus clause of its policy. In upholding a verdict in her favor and denying a judgment n.o.v., the late and distinguished Shackleford Miller, then United States District Judge and later Judge of the Circuit Court of Appeals for the Sixth Circuit, wrote as follows:

"The purpose of the omnibus clause was to extend the coverage beyond the limitations which would otherwise exist under the law of principal and agent. Its addition to the usual terms of liability insurance policies was for the purpose of increasing the advantages of the policy being purchased, to provide additional coverage, and to be used as a selling point in competition with other standard policies. To give it a construction which is closely parallel to the existing law of principal and agent would ignore the evident purpose of its being made a part of the policy. In my opinion the purpose of the omnibus clause was to extend the liability insurance coverage to a person other than the owner who had the possession and use of the car with the permission of the owner for a somewhat limited period of time, without arbitrary and definite restrictions as to just what could be or what could not be done with the car during that period of time. The time element during which the use is permitted by the owner is in my opinion the element to be stressed rather than the particular use to which the car is put, so long as the particular use does not vary materially from the contemplated or usual use of a car under similar conditions. The main purpose of the clause is to substitute the operator of the car for the owner of the car while the car is being operated with the permission of the owner. This purpose is not given effect to its normal and full extent if we adopt the limitations now urged upon us by the defendant."

The *Hall, Brann* and *Vezolles* opinions all are analyzed and discussed in Yorkshire Indemnity Co. of New York v. Collier, 172 F. 2d 116 (6 Cir., 1949), in which one Legg, a farm hand on the stock farm of Warner Jones, Jr., a prominent horseman, had an accident while joyriding with his girl friend in the Jones automobile. He had been instructed to wash the car, have it serviced at a garage about a mile and a half up Highway 42, and return it to the farm by 5 o'clock. After washing the car, Legg took his girl friend with him to the garage, had the car serviced, and decided to go up the road "for a little pleasure trip," in the course of which he collided with two other vehicles at a point on U. S. 42 four or five miles beyond the garage or service station. An occupant of one of the other automobiles involved in the accident was injured and obtained a judgment against Legg, which proved to be uncollectible. She then brought suit in federal court against Mr. Jones' insurance carrier under the omnibus clause of its policy. At the close of the evidence the court directed a verdict for the plaintiff, explaining to the jury that Legg's deviation from his mission in riding up the highway with his

girl "was not such an unwarranted or unusual use of the car" as would, in view of the omnibus clause, vitiate the coverage of the policy. In affirming a judgment entered pursuant to the directed verdict, the Circuit Court of Appeals concluded as follows (172 F.2d at p. 122):

> "In both the Vezolles case and the case at bar, the time element of permissive use broadly distinguishes them from the Brann case. Viewing the Brann case in its complete aspect, we consider it, as well as the Vezolles case, as authority under Kentucky law for affirmance of the judgment herein."

In a comprehensive annotation entitled, "Automobile liability insurance: permission or consent to employee's use of car within meaning of omnibus coverage clause," 5 A. L.R.2d 600, it is said (5 A.L.R.2d at p. 622) that the courts throughout the country divide along three lines in determining whether a deviation from the purpose and use for which permission is granted will preclude coverage of an employe under the omnibus clause. At one extreme is the "strict" rule that the vehicle must have been used for a purpose reasonably within the scope of the permission given and that any deviation as to time or place will defeat liability. At the other extreme is the "liberal" rule that if the employe has obtained *possession* by permission, such permission extends to any and all *uses* of the vehicle. In between, and most difficult to apply, is the "minor deviation" rule that a "slight" deviation from the scope of the express or implied permission will not lift the coverage but a "material" deviation will. On the basis of the authorities we have thus far discussed, Kentucky is listed as belonging to the last school of thought. Cf. 5 A.L.R.2d at pp. 625 et seq.

It will be noted that all of the cases we have mentioned deal with the omnibus clause, under which the owner's insurance is extended to third parties using the vehicle with permission. With respect to Maryland, however, we are concerned with the clause under which the insured himself is covered while using a vehicle he does not own, and although the language of the two clauses relating to "permission" is virtually identical, we are of the opinion that they do not call for the same construction.

 Under the omnibus clause the insurance company extends its coverage to third parties in reliance on the judgment and discretion of its insured in giving his permission. It really does not bargain for risks arising outside and beyond what is fairly within his contemplation when he gives that permission, whether it be express or tacit. Therefore it is proper that such permission not be stretched beyond what he ought reasonably to foresee at the time and under the circumstances of the permission. But when the driver of an automobile, by whomsoever it may be owned, is the insured himself, he is the same man on whose skill and judgment the company relied. Should he steal a car and flee, of course, the risk of accident increases beyond what the company is willing to insure against, but under almost any other circumstances it is hard to understand what difference it would make to the insurer whether he does or does not have permission to use the vehicle. And so we are of the opinion that under that clause of Maryland's policy insuring Moore while using a non-owned vehicle with the permission of its owner the "liberal" or "initial permission" rule should prevail, and that since at the time of the accident Moore had possession of the station wagon with the tacit permission of its owner it is immaterial that the purpose and place may not have been within the scope of such permission.

 The jury's finding that Moore was operating the station wagon with the permission of Simmonds was tantamount, of course, to a finding that he had possession of it with the consent of Simmonds. That, in our opinion, is enough to satisfy the permission requirement of Maryland's clause covering Moore while using a non-owned vehicle. With respect to Phoenix, however, a majority of the court is of the opinion

that the Sunday trip to LaGrange was not fairly within the contemplation of Simmonds in suffering Moore to use the station wagon and was therefore a material deviation, exceeding the scope of the implied permission.

The judgment is affirmed in part and reversed in part with directions that a judgment be entered dismissing the actions as to Phoenix and awarding recovery in full against Maryland.

All concur except that OSBORNE, J., would apply the "liberal" or "initial permission" rule to both policies and would affirm the judgment of the circuit court.