Eric **MITCHELL, et al., Appellants,**

v.

**ALLSTATE INSURANCE COMPANY,**
**Appellee.**

No. 2005–SC–000571–DG.

Supreme Court of Kentucky.

Jan. 24, 2008.

---

5. 257 Ky. 42, 77 S.W.2d 425 (1934).

6. *Id.* at 426.

Dan E. Siebert, Siebert & Johnson, PLLC, Kevin C. Burke, Louisville, KY, Counsel for Appellants.

A. Campbell Ewen, William P. Carrell II, Ewen, Kinney & Rosing, Louisville, KY, Counsel for appellee.

Opinion of the Court by Justice SCOTT.

Appellants, Eric Mitchell and Candace Slade, appeal from a Court of Appeals decision upholding a summary judgment ruling of the Harrison Circuit Court in favor of Appellee, Allstate Insurance Company. The summary judgment ruling held that a car insurance policy's omnibus clause did not provide coverage for a non-owner driver of the vehicle because the vehicle's named insured did not consent to the driver's use of the vehicle. Appellants contend that the question of whether the driver had permission to use the vehicle, and hence had coverage under the policy's omnibus clause, is a factual issue that should be submitted to a jury. Appellants further request that the "initial permission" rule, which defines the scope of permission one has to use a borrowed vehicle, be adopted in this state. For the reasons set out, we now reverse the Court of Appeals and adopt the initial permission rule.

In early 2001, Rita Taylor gave her friend, Virginia Warner, her husband Rodney Taylor's 1989 Toyota Camry to use for an indefinite term. The car title remained in Mr. Taylor's name and both Mr. and Mrs. Taylor were the named insureds on the automobile policy issued by Appellee.

On April 1, 2001, Ms. Warner's son, Allan, asked her for permission to drive the car to work. Ms. Warner granted this request and Allan took the car. At some point during the day, Allan picked up two of his friends, the Appellants, and drove them around. Unfortunately, Allan had a car accident and was killed. Appellants were seriously injured.

In December 2003, Appellee intervened in Appellants' suit against Allan's estate seeking a declaration that Allan could not be deemed an insured under the omnibus clause [1] of the Taylors' policy because he did not have permission to drive the car. Supporting this position are statements from Mrs. Taylor indicating that Allan was forbidden from driving the car by her and from Ms. Warner that he exceeded the scope of permission he was granted by her since he was given permission only to drive to work, not to drive around with friends. However, other facts disclosed by Mrs. Taylor indicated that Allan may not have been completely barred from using the vehicle. Such facts include that the Taylors were going to let Ms. Warner have the vehicle to use as her own, that the Taylors had no intention of asking for their vehicle back, and that Mrs. Taylor, if asked, would have let Allan drive the vehicle on the day of his accident. Despite the seeming contradiction, the Harrison Circuit Court granted summary judgment to Appellee finding that there were "no issues of material fact in dispute" and Appellee was "entitled to judgment as a matter of law."

The Court of Appeals upheld the summary judgment, finding that Appellants had "proffered no evidence that would permit a jury to disregard Mrs. Taylor's expressly forbidding Allan from driving her car." The Court of Appeals believed that Allan's driving of the car, even with his mother's permission, was a major deviation from the permission Mrs. Taylor conferred, and thus, under the "minor deviation" rule, no coverage was provided by the omnibus clause. In so deciding, the Court of Appeals acknowledged that had the "initial permission" rule applied, Allan's use of the vehicle would be covered because his usage, though it frustrated Mrs. Taylor's restriction, did not amount to a conversion of the vehicle.

## I. The initial permission rule satisfies the policy reasons and purpose behind Kentucky's Motor Vehicle Reparations Act

■ An automobile insurance company has a general responsibility to provide coverage for people who may not be named insureds in the written policy, but fall under the coverage provided for in the policy. 46 C.J.S. *Insurance* § 4045 (1993); *see also* KRS § 304.39–080(5) (requiring that insurance be provided for any vehicle that is operated by the insured or by someone who has the insured's permission to operate the car). This responsibility is usually satisfied through the language of the policy's omnibus clause which extends insurance protection to persons other than the

1. The parties agree that the omnibus clause of the Taylors' insurance policy defines "insured person" as:
    1. You and any resident relative; 2. Any other person while in, on, getting into or out of an insured auto with your permission; 3. Any other person who is legally entitled to recover because of bodily injury to you, your resident relative, or an occupant of your insured auto with your permission.

named insured—including people who pay no premiums toward the policy and are in effect unknown to the insurer. 46 C.J.S. *Insurance* § 1045 (1993). The omnibus clause's main purpose is to maximize the availability of insurance proceeds for the benefit of the general public. *Id.; see also Burr v. Nationwide Mut. Ins. Co.,* 178 W.Va. 398, 359 S.E.2d 626, 632 (1987) ("the primary purpose of the omnibus clause in a policy is to maximize the availability of insurance proceeds; that the principal beneficiary of the clause is the general public; and that the clause is remedial in nature and must be construed liberally so as to provide insurance coverage where possible"). Frequently the omnibus clause's language extends coverage to any individual properly using the insured vehicle. 46 C.J.S. *Insurance* § 1045 (1993). And generally, an individual is covered if the person driving the insured vehicle had permission to operate the vehicle. *See Vezolles v. Home Indem. Co., New York,* 38 F.Supp. 455, 459 (W.D.Ky.1941) ("The main purpose of the clause is to substitute the operator of the car for the owner of the car while the car is being operated with the permission of the owner."); *see also Maryland Cas. Co. v. Hassell,* 426 S.W.2d 133, 137 (Ky.1967). Such permission can be either express or implied. *Id.* at 134–135.

Sometimes, as in this matter, an operator of a vehicle has initial express or implied permission to operate a vehicle, but arguably exceeds the scope of the permission granted. In these situations, it is necessary for the courts to determine whether such a violation is egregious enough to justify denying coverage despite the omnibus clause. There are three lines of thought on how to analyze whether the deviation from the scope of permission should negate coverage. *See* C.T. Drechsler, Annotation, *Automobile Liability Insurance: Permission or Consent to Em-*

*ployee's Use of Car Within Meaning of Omnibus Coverage Clause,* 5 A.L.R.2d 600 (1949); *see also* 46 C.J.S. *Insurance* § 1053 (1993) (discussing the different methods of analysis for determining whether the deviation from permissive use of vehicle causes the driver to be uninsured). The harshest rule is the "strict" rule which holds that coverage only exists if the use of the vehicle was one intended by the parties. *Id.* The intermediate rule is the "minor deviation" rule, where coverage is extended under an omnibus clause as long as the deviation from the granted permission in using the vehicle is "slight and inconsequential, but not if it is substantial." *Id.* Kentucky courts have historically applied the "minor deviation" rule in determining whether or not a deviation from the scope of permission invalidates coverage. *Hassell,* 426 S.W.2d at 138.

The third rule is the "initial permission" rule which allows for coverage even if the use of the vehicle was "not within the contemplation of the parties or was outside any limitations placed upon the initial grant of permission." 46 C.J.S. *Insurance* § 1053 (1993). Thus, as long as the original taking of the vehicle was with permission of the named insured, any subsequent use of the vehicle by the borrower would be covered by the policy. 7 Am. Jur.2d *Automobile Insurance* § 235 (2007). Any subsequent change in the character or scope of the use does not require express permission from the insured. *Id.* Such a change in the character or scope may involve the vehicle's initial borrower allowing a secondary user to borrow the car without the insured's express permission. *Id.* Even a person who was specifically prohibited from using the vehicle by the named insured can be covered through the omnibus policy if that specific person obtained consent from the initial borrower. *Id.; see also United*

*Servs. Auto. Ass'n v. Nat'l Farmers Union Prop. & Cas.*, 119 N.M. 397, 891 P.2d 538, 540–541 (1995) (holding that coverage under omnibus clause extends to any subsequent permittee operating insured vehicle as long as named insured has given his or her initial permission to use vehicle, even if named insured prohibits use by anyone other than initial permittee). However, a use of the vehicle that amounts to conversion or theft is not covered under the initial permission rule. 46 C.J.S. *Insurance* § 1053 (1993).

This Court has yet to examine whether the "minor deviation" rule should *remain* the standard of analysis in light of the passage of the Motor Vehicle Reparations Act (MVRA), KRS §§ 304.39–010–304.39–340, in 1974. While *Preferred Risk Mutual Insurance Co. v. Kentucky Farm Bureau Mutual Insurance. Co.*, 872 S.W.2d 469, 470–471 (Ky.1994), does state that the MVRA did not change the long-standing policy that one does not have insurance coverage if they did not have the owner's permission to operate the vehicle, *it did not* analyze what standard should be applied if the person had the owner's express or implied permission but arguably exceeded the scope of that permission in using the vehicle. Because of the spirit of the MVRA and for general policy reasons, the "initial permission" rule is an attractive choice as the proper standard for determining whether one's use of a vehicle exceeded the scope of permission given to that person.

The main reason for the adoption of the MVRA was to create a system to protect "the interests of victims, the public, policyholders and others." KRS § 304.39–010. Specific purposes for the act include:

3) To encourage prompt medical treatment and rehabilitation of the motor vehicle accident victim by providing for prompt payment of needed medical care and rehabilitation;

5) To reduce the need to resort to bargaining and litigation through a system which can pay victims of motor vehicle accidents without the delay, expense, aggravation, inconvenience, inequities, and uncertainties of the liability system

*Id.* In furtherance of simplifying and speeding up the process of providing compensation for car accident victims, the MVRA must be interpreted liberally to accomplish its public policy goals.

[T]he specific requirements of Kentucky's Motor Vehicle Reparation Act, and the public policy goals it means to address, supercede general principles of insurance law as broadly applied. The significant changes brought about by the MVRA were aimed at a specific objective: to insure continuous liability insurance coverage in order to protect the *victims* of motor vehicle accidents and to insure that one who suffers a loss as the result of an automobile accident would have a source and means of recovery. *Our courts have explained that the MVRA is social legislation that must be liberally construed to accomplish those objectives.*

*Nat'l Ins. Ass'n v. Peach,* 926 S.W.2d 859, 861 (Ky.App.1996) (internal citations omitted) (emphasis added).

Along those lines, the language of KRS § 304.39–030 broadly provides for basic reparation benefits for car accident victims. "If the accident causing injury occurs in this Commonwealth *every person* suffering loss from injury arising out of maintenance or use of a motor vehicle has a right to basic reparation benefits, unless he has rejected the limitation upon his tort rights as provided in KRS 304.39–060(4)." KRS § 304.39–030(1) (emphasis added). Importantly, basic reparation rights are not extended to those parties who have stolen or converted the vehicle, KRS

§ 304.39–190, or those who intended to cause injury to himself or others with the vehicle, KRS § 304.39–200. A person is not considered a converter if he has used "the motor vehicle in the good faith belief that he is legally entitled to do so." KRS § 304.39–190.

Further, this Court in *Beacon Insurance Co. of America v. State Farm Mutual Insurance Co.*, 795 S.W.2d 62 (Ky.1990), held that a named driver exclusion clause violated public policy because it "render[ed] a driver uninsured as to the compulsory statutory minimum limits" as mandated by the MVRA. *Id.* at 63. *Beacon* stated that "KRS 304.39–010(1) purposes to require, and KRS 304.39–080(5) does require, security for payment of tort liabilities arising from maintenance or use of a motor vehicle." *Id.* Hence any exclusion provision was considered invalid because it "render[ed] a motor vehicle owner or operator uninsured and thereby violate[d] the legislatively mandated public policy of compulsory insurance." *Id.* at 64, *citing Bishop v. Allstate Ins. Co.*, 623 S.W.2d 865 (Ky.1981). While the legislature ultimately allowed certain people to be excluded from insurance coverage through the passage of KRS § 304.39–045, *Beacon* makes clear that this Court can and will see that the General Assembly's clear intent—that all Kentucky motorists should have automobile liability coverage—is satisfied in all reasonable instances. *Beacon*, 795 S.W.2d at 63 (holding that the "clear and accurate enunciation of the express legislative intent set forth in the MVRA, and its rationale" would not allow an exclusion which would prevent a person from having automobile insurance to cover tort liability). The initial permission rule thus furthers the General Assembly's goal of making sure an innocent driver, like Allan, is covered by insurance when given permission by his mother to borrow a car, while the "minor deviation" rule more often than not engenders litigation for this same purpose.

The initial permission rule is thus more consistent with Kentucky's interpretation of the MVRA as well as its statutory intent than the "minor deviation" rule. By adopting the initial permission rule, we fulfill the general spirit and intent of KRS § 304.39–030 to provide *a victim* the right to compensation for his/her injuries. In addition, we believe that the initial permission rule will further the goals of KRS § 304.39–010 by speeding up the process of compensating victims because determining the scope of permission granted to the vehicle operator will no longer be as complex, or litigation prone, as it was under the minor deviation rule. *See generally Am. Fid. Co. v. N. British & Mercantile Ins. Co.*, 124 Vt. 271, 204 A.2d 110, 114 (1964) (Shangraw, J., concurring) (opining that the minor deviation rule breeds litigation because it is flexibly applied and offers too many escape hatches). Moreover, such a rule will also remove any incentive on the part of an owner of a borrowed vehicle to unconsciously color his testimony in order to avoid potential personal liability for the lending of a vehicle.

Indeed, several other jurisdictions have found multiple benefits and justifications in adopting an "initial permission" rule under their statutory schemes. *See Norton v. Lewis*, 623 So.2d 874, 875 (La.1993) ("The primary justification for the 'initial permission' rule is that it effectively furthers the state's policy of compensating and protecting innocent accident victims from financial disaster. Moreover, its application serves to discourage collusion between lender and lendee in order to escape liability and to greatly reduce a most costly type of litigation."); *U.S. Fid. & Guar. Co. v. Fisher*, 88 Nev. 155, 494 P.2d 549, 551–552 (1972) (stating that the "initial permission rule" not only reduces litigation, but allows for the wrongfully injured to have financially responsible people to look to-

ward for damages); *Universal Underwriters Ins. Co. v. Taylor,* 185 W.Va. 606, 408 S.E.2d 358, 364 (1991) ("We think that the 'initial permission' rule best effectuates the legislative policy of providing certain and maximum coverage, and is consistent with the language of the standard omnibus clause automobile liability insurance policies.").

█ For the foregoing reasons, we now adopt the initial permission rule as the standard for determining whether a non-owner's use of a vehicle exceeds the scope of permission given to that person. Now as long as permission is initially given to a person to use a vehicle, insurance coverage may extend to subsequent vehicle users through the language of the omnibus clause as long as those subsequent users have permission from the initial borrower to use the vehicle. This coverage applies even if the subsequent usage of the vehicle was not contemplated by the parties at the time the initial permission was granted. However, our initial permission rule must be limited: use of a vehicle which amounts to conversion is not covered through the omnibus clause unless the clause specifically allows for such coverage. *See* KRS 304.39–190; Preferred *Risk,* 872 S.W.2d at 470–471 (holding that the MVRA did not create a duty for vehicle owners to carry insurance for one who operates the vehicle after converting it). Further, the initial permission rule analysis must also take into consideration the bar for benefits arising from usage of a vehicle when the operator intentionally attempts to injure someone with a vehicle. *See* KRS 304.39–200.

**II. Summary judgment was improper because under the initial permission rule, Allan had the permission of his mother, Ms. Warner, to use the vehicle**

█ The Harrison Circuit Court granted and the Court of Appeals upheld summary judgment in favor of Appellee because they both believed that, under the previous minor deviation standard, it was undeniable that Allan either did not have permission to operate the vehicle the day of his car accident or that he exceeded his scope of permission. However, under the initial permission rule, Allan is not barred from coverage.

It is undisputed that Mrs. Taylor allowed Ms. Warner to use the vehicle. This permission made Ms. Warner the initial borrower of the vehicle under the initial permission rule and gave her the authority to allow others to use the vehicle, including Allan. Even if Ms. Warner was expressly prohibited by Mrs. Taylor from allowing Allan to use the vehicle, since Ms. Warner gave Allan permission to use the vehicle, Allan receives coverage through the policy's omnibus clause. There is no evidence that Allan's usage of the vehicle rose to the level of conversion or that he intentionally caused the accident to injure himself or others which would eliminate coverage. With the initial permission rule in mind, we therefore do not believe that Appellee was entitled to judgment as a matter of law.

Thus, we reverse the Opinion of the Court of Appeals and the summary judgment in favor of Appellee, and remand the matter to the Harrison Circuit Court for further proceedings.

All sitting. LAMBERT, C.J.; CUNNINGHAM, NOBLE and SCHRODER, JJ., concur. MINTON, J., concurs in result only by separate opinion, with ABRAMSON, J., joining this opinion.

### *CONCURRING IN RESULT ONLY*

Opinion by Justice MINTON.

Today, a majority of our Court boldly embraces the initial permission rule, a new

law that rewrites every Kentuckian's compulsory auto liability insurance contract. I do not join the majority in this venture because, as I see it, broad public policy decisions like this belong to our General Assembly where the costs and the benefits of this new direction for all citizens of the Commonwealth can be fully debated in the public arena and subjected ultimately to a majority vote by those whom the people have elected for that purpose. My position on this larger issue of judge-made law on a grand scale compels me to write separately to disagree respectfully with the decision of the majority even though I do agree that the summary judgment must be reversed in light of facts affecting whether liability coverage for permissive use existed under the minor deviation rule.

### I. *WE SHOULD RESOLVE ONLY THE CASE BEFORE US.*

I would reverse this case on issues that are properly before us, resolving it simply under our known precedent. Under our known precedent, a slight or non-material deviation by the driver from the purpose and use for which the owner granted permission to use the motor vehicle does not preclude coverage under the omnibus clause of the auto liability policy. *See Maryland Casualty Co. v. Hassell,* 426 S.W.2d 133, 137 (Ky.1967); *see also Vezolles v. Home Indemnity Co., New York,* 38 F.Supp. 455, 459 (W.D.Ky.1941). Summary judgment cannot be granted if there is a factual dispute surrounding the application of this rule.

From the evidence thus far produced in the case before us, it does not appear at all clear to me that Rita Taylor had "expressly forbidden the driver's [Allan's] use of the car."[1] The record contains deposition testimony that Rita forbade Allan from using the car at one point; but it is not clear that her flat prohibition was effective on the day of the accident, especially since Rita testified that Virginia had the authority to decide when Allan could use the car. The record is not clear that Rita had communicated directly to Virginia that Allan could not use the car. It seems that Virginia may have witnessed or heard that Rita told Allan not to use the car after he exceeded the bounds of the permission Virginia gave Allan on one occasion. But there is a conflict between Virginia's deposition testimony that she was very strict about Allan's use—only allowing him to use the car for specific purposes, such as going to work, and not allowing him to take passengers along—and Allan's friends' affidavits stating that Virginia allowed him more liberal use of the car, including transporting passengers. So there are genuine issues of material fact to be resolved by a jury.

### II. *KENTUCKY'S MVRA DID NOT CHANGE LAW TO REQUIRE INITIAL PERMISSION RULE.*

The majority builds its case for the initial permission rule on the premise that we are constrained to do so "[b]ecause of the spirit of the MVRA[,] and ... general policy reasons" impel it. But I do not agree that the MVRA, which became effective in Kentucky in 1975, really changed the law in any way that would mandate the initial permission rule. And we said that in *Preferred Risk Mutual Insurance Company v. Kentucky Farm Bureau Mutual Insurance Company,* 872 S.W.2d 469, 470–71 (Ky.1994).

Before the MVRA, Kentucky had motorists' financial responsibility laws codified in former KRS 187.290, *et. seq.,* which was

---

**1.** The Court of Appeals opinion stated that the trial court had granted summary judgment because "[t]he trial court found that there was no issue of fact because the named insured had expressly forbidden the driver's use of the vehicle."

enacted in 1946 and mostly repealed in 1975.[2] A main purpose of these statutes was to ensure that innocent victims of motor vehicle accidents received compensation. 1946 Acts, Chapter 118 was titled "AN ACT to promote safe driving and to remove the reckless and financially irresponsible drivers from the highways; ... providing for operator to offer proof of ability to respond in damages as condition precedent to future licensing or registration...." *See also Allen v. Canal Ins. Co.,* 433 S.W.2d 352, 354 (Ky.1968) (stating that fundamental purpose of Financial Responsibility Law was to provide compensation to people injured by "faulty" driving). So the goal of providing compensation to victims of motor vehicle accidents was not something new in the MVRA.

In fact, a careful reading of the stated goals of the MVRA does not support the view that the General Assembly meant for that statute always to call for the most liberal compensation of victims.

KRS 304.39–010 frames the policy and purpose behind Kentucky's MVRA (KRS Chapter 304, Subtitle 39) as follows:

The toll of about 20,000,000 motor vehicle accidents nationally and comparable experience in Kentucky upon the interests of victims, the public, policyholders and others require that improvements in the reparations provided for herein be adopted to effect the following purposes:

(1) To require owners, registrants and operators of motor vehicles in the Commonwealth to procure insurance covering basic reparation benefits and legal liability arising out of ownership, operation or use of such motor vehicles;

(2) To provide prompt payment to victims of motor vehicle accidents without regard to whose negligence caused the accident in order to eliminate the inequities which fault-determination has created;

(3) To encourage prompt medical treatment and rehabilitation of the motor vehicle accident victim by providing for prompt payment of needed medical care and rehabilitation;

(4) To permit more liberal wage loss and medical benefits by allowing claims for intangible loss only when their determination is reasonable and appropriate;

(5) To reduce the need to resort to bargaining and litigation through a system which can pay victims of motor vehicle accidents without the delay, expense, aggravation, inconvenience, inequities and uncertainties of the liability system;

(6) To help guarantee the continued availability of motor vehicle insurance at reasonable prices by a more efficient, economical and equitable system of motor vehicle accident reparations;

(7) To create an insurance system which can more adequately be regulated; and

(8) To correct the inadequacies of the present reparation system, recognizing that it was devised and our present Constitution adopted prior to the development of the internal combustion motor vehicle.

In short, the plain language of these statutory goals—particularly subsection 4—reflects a list of policy choices to provide prompt and liberal wage loss and medical

**2.** Other laws (former KRS 187.010 to 187.280) relating to the financial responsibility of motorists were repealed by the 1946 Act. I would imagine that these former statutes also required in some form that motorists be prepared to provide compensation to innocent people injured by their irresponsible driving.

benefits (no-fault benefits) without the victim's being forced into litigation regarding fault. In exchange, the General Assembly placed some limitations on tort liability by allowing damages for non-economic losses only after a certain threshold has been met. I would note that in the instant case, no-fault benefits are not an issue. Rather, the issue before us concerns the broader tort liability coverage for an accident resulting in major injuries. I believe that the majority confuses the MVRA's goal of providing broader compensation in terms of *no-fault benefits* with a different goal of providing broader *liability* coverage when, in fact, the MVRA traded broader *no-fault* coverage for limitations on *liability* coverage.

My interpretation of the spirit of the MVRA finds support in secondary authority published soon after the enactment of the MVRA. A *Kentucky Law Journal* note published just a year or two after the MVRA became effective interpreted these stated legislative goals to "reflect a desire for prompt and liberal recovery to accident victims without regard to fault. While this section does not emphasize the abolition of tort liability, it does express the desire to reduce litigation." Robert P. Moore & David W. Rutledge, Note, *Kentucky No-Fault: An Analysis and Interpretation,* 65 Ky.L.J. 466, 473–74(1976–77).

I would note that the "prompt and liberal recovery" relates to no-fault benefits. In fact, tort liability is somewhat limited under the MVRA. And the sought-after reduction of litigation means fewer lawsuits over relatively minor accidents, not necessarily less litigation over whether coverage exists. Ironically, according to this law journal note, the MVRA, as originally enacted, was actually not as strong as the former financial responsibility laws in requiring insurance. *Id.* at 504.

In addition to the MVRA's not generally providing broader tort liability coverage, it also did not specifically alter tort liability coverage where another driver operated the car with the owner's permission. The former financial responsibility laws exempted owners from the requirement of providing security where the vehicle was operated by someone else without the owner's permission. Former KRS 187.340(3). These laws required that motor vehicle liability insurance policies "[s]hall insure the person named therein and any other person, as insured, using any such motor vehicle with the express or implied permission of the named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance[,] or use of the motor vehicle[.]" Former KRS 187.490(2)(b). In other words, omnibus clauses for others using the car with the owner/insured's permission were required by the law years before the MVRA. The MVRA did not essentially change this by requiring that owners provide security such as insurance for basic reparations or tort liability arising out of others' operating the vehicle with the owner/insured's permission. KRS 304.39–080(5).

So I believe the majority builds on sand its foundational premise that attributes to the General Assembly the mandate to adopt the initial permission rule through its enactment of the MVRA, which does not generally broaden the availability of liability coverage nor specifically broaden tort liability coverage for accidents arising from the permissive use of a vehicle by one other than the named insured.

III. *LACK OF PRESERVATION OF IMPLIED PERMISSION RULE APPLICABILITY.*

Preservation of this issue is questionable at best since the appellants' arguments to the trial court and their briefs to the Court

of Appeals did not explicitly urge adoption or application of the initial permission rule. Actually, the trial court made no ruling concerning the applicability of the initial permission rule or the minor deviation rule. The trial court simply ruled that no genuine issue of material fact remained and that summary judgment was granted on the basis that Rita Taylor prohibited Allan from using the car.

I recognize that the trial court and Court of Appeals lacked the authority to overrule binding precedent that applied the minor deviation rule; but, nonetheless, I hesitate to disturb precedent and adopt a sweeping new rule where the issue was not presented to the trial court or even to the Court of Appeals. It was the Court of Appeals, acting on its own initiative, that effectively invited consideration of the issue by suggesting in its opinion that the trial court's ruling on summary judgment was correct under the minor deviation rule established in Kentucky precedent but would not be correct if the initial permission rule were applied. And I would note that Allstate has not objected to appellants arguing this issue before us. But I would decline to consider the initial permission rule issue as unpreserved.

## IV. *ALLURE OF THE INITIAL PERMISSION RULE.*

I recognize the appeal of the initial permission rule as reducing litigation concerning coverage and ensuring that victims are compensated. I also think one could fairly say that Kentucky has a long history of enacting statutes aimed at providing motor vehicle accident victims with compensation going back to at least 1946 and probably earlier. Clearly, the initial permission rule would be more successful in meeting this goal; and I really do not understand why earlier precedent embraced the minor deviation rule instead, although I recognize that perhaps the minor deviation rule was viewed as a middle-of-the road approach that better reflected the parties' intentions as to coverage under the contract.

As the majority demonstrates today, this Court has the authority to overrule existing precedent and embrace the initial permission rule as best achieving long-standing and laudable legislative goals compensating injured victims—goals that I view as pre-dating the MVRA. But I would decline to abandon settled law in this area, especially since the adopting the initial permission rule is pure policy-making, which I view as a legislative function.

## V. *CONCLUSION.*

I concur with the result reached by the majority, but I would reverse the lower courts' decisions only because there exist genuine issues of material fact.

ABRAMSON, J., joins this opinion concurring in result only.