MICHELSON, District Judge.
This insurance dispute arose from a 2011 automobile accident involving Davida Sullivan and James Blake. Davida collided with Blake’s vehicle while driving a 1999 Mercedes listed on an insurance policy that Selective Insurance Company of South Carolina had issued Omni Custom Meats, Inc. The question presented in this appeal is whether the named insured, Omni, “borrow[ed]” the Mercedes from its owners, Curtis and Sharon Sullivan (Davi-da’s parents), as that term is used in the policy. We hold that Omni did not. Nor does the reasonable expectations doctrine require Selective to provide coverage. Therefore, the district court’s opinion will be affirmed.
I.
James Blake sustained injuries in an automobile accident on May 9, 2011. Davi-da Sullivan was driving a 1999 C230 Mercedes in Los Angeles, California when she made a sudden left turn to enter a shopping center parking lot and collided with Blake’s vehicle. The crash site investigator determined that Davida caused the accident by “making an unsafe left turn[.]” (R. 69-7, PID 894.)
Davida’s parents, Curtis and Sharon Sullivan, owned the Mercedes. In 2007, they allowed their Kentucky meatpacking company, Omni Custom Meats, Inc. to use the Mercedes for “business purposes.” (R. 69-11, PID 917.)
Davida began working for Omni in 2001. She performed mostly “back office” work from her home in California. She earned a salary and benefits, and, starting in 2009, was given permission by Omni to use the Mercedes.
In January 2011, Omni “[ran] out of work” for Davida, and she stopped working for the company. (R. 69-11, PID 915.) Omni provided a severance package, which, according to Curtis’s deposition testimony, included health insurance, dental insurance, auto insurance, and permission to keep using the Mercedes.
Between January and May 2011, Davida started a jewelry and clothing business in California. Even so, Davida was driving the Mercedes with Omni’s permission on the date of the accident.
Selective issued the relevant policy to Omni on June 27, 2007. The Policy provided certain Commercial General Liability, Business Automobile, and Commercial Umbrella Liability coverages. The Business Automobile Policy provides, “We will pay all sums an ‘insured’ legally must pay as damages because of ‘bodily injury[1] or ‘property damage’ to which this insurance applies, caused by an ‘accident’ and resulting from the ownership, maintenance or use of a covered ‘auto.’” (R. 69-2, PID 844.) The Commercial Umbrella Liability Policy provides, “We will pay on behalf of the insured the ‘ultimate net loss’ in excess of the ‘retained limit’ that the insured becomes legally obligated to pay as damages because of ‘bodily injury[1] ... to which this insurance applies.” (R. 69-2, PID 855.) The Business Auto and Commercial Umbrella Liability coverages provide identical definitions of “Who Is An Insured.”[1] (R. 69-2, PID 852, 855.) Critical to this appeal, both state, “The following are ‘insureds’: a. You for any covered ‘auto’, b. Anyone else while using with your permission a covered *382 'auto' you own, hire or borrow....” (R. 69-2, PID 843, 863.) It is undisputed that the “you” refers to Omni.
It is equally undisputed that the Policy did not expressly name Davida as an insured. Omni’s initial application requested coverage for two drivers, Curtis and Sharon Sullivan, and four vehicles, none of which were the Mercedes. On June 28, 2007, the Mercedes was added to the Policy by endorsement. The endorsement did not list any additional drivers, nor did it list a garage location for the vehicle. On May 12, 2008, Selective requested an updated drivers list as part of the policy renewal. But no one advised Selective that Davida would be driving the Mercedes in California, or that Davida had a DUI infraction on her driving record. Nonetheless, Blake asserts that Davida is an insured under Omni’s insurance policy because Omni “borrow[ed]” the Mercedes from Curtis and Sharon and Davida used the car with Omni’s “permission.”
In March 2012, Blake filed suit in California against Omni, Curtis and Sharon Sullivan, and Davida Sullivan. Selective agreed to provide a defense to Omni and the Sullivans in the California action, subject to a reservation of rights pending an investigation. In March 2015, Omni, Curtis, and Sharon were dismissed from the California action with prejudice, leaving Davi-da as the only defendant. Blake purports to be the assignee of any of Davida’s rights as an “insured” under the Policy.
Meanwhile, in October 2012, having determined that the accident was not covered under the terms of Omni’s policy, Selective filed a complaint in the United States District Court for the Western District of Kentucky, seeking a declaratory judgment of its rights and duties with respect to the California action. The district court ultimately found that Davida Sullivan was not an “insured” within the meaning of the Policy at the time of the accident and therefore, Selective had no duty to provide coverage.
This appeal followed.
II.
“We review de novo the district court’s decision to grant a motion for declaratory judgment.” Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 563 (6th Cir. 2008). “In a diversity action involving an insurance contract, a federal court applies the substantive law of the forum state,” here Kentucky. Talley v. State Farm Fire & Cas. Co., 223 F.3d 323, 326 (6th Cir. 2000).
III.
A.
“In applying Kentucky law we must follow the decisions of the state’s highest court when that court has addressed the relevant issue. When the issue has not been directly addressed, we must anticipate how the relevant state’s highest court would rule in the case and are bound by controlling decisions of that court.” Scottsdale Ins. Co., 513 F.3d at 563 (citations and internal quotation marks omitted). In Kentucky, “the construction and legal effect of an insurance contract is [generally] a matter of law for the court.” Coleman v. Bee Line Courier Serv., Inc., 284 S.W.3d 123, 125 (Ky. 2009) (quoting Bituminous Cas. Corp. v. Kenway Contracting, Inc., 240 S.W.3d 633, 638 (Ky. 2007)). The Kentucky Supreme Court recently held,
Any ambiguities in an insurance contract must be resolved in favor of the insured, but this rule of strict construction certainly does not mean that every doubt must be resolved against the insurer and does not interfere with the rule that the policy must receive a reasonable inter *383 pretation consistent with the plain meaning in the contract.
Tower Ins. Co. of New York v. Horn, 472 S.W.3d 172, 174 (Ky. 2015) (citing Ky. Ass’n of Ctys. All Lines Fund Trust v. McClendon, 157 S.W.3d 626, 630 (Ky. 2005)).
Under the Policy, coverage is available for “all sums an ‘insured’ legally must pay as damages ... caused by an ‘accident’ and resulting from the ownership, maintenance or use of a covered ‘auto.’” (R. 69-2, PID 843.) To resolve the issue of coverage, we must decide whether Davida was an “insured” under the Policy. An “insured” includes “Anyone else while using with your permission a covered ‘auto’ you own, hire or borrow....” (R. 69-2, PID 843.) Again, “you” and “your” refers to Omni, the named insured. It is not disputed that the Mercedes was “covered” or that Davida used it with Omni’s “permission.” The only issue before us is whether Omni “borrow[ed]” the Mercedes from Curtis and Sharon Sullivan at the time of the accident.
The Policy does not define the term “borrow.” Nor does Kentucky case law—at least in the context of an automobile insurance policy. Blake urges several meanings of the term. We need not decide which, if any, is the proper definition of “borrow” because Omni meets none of them.
First, Blake urges that we adopt a dictionary definition of “borrow.” To be sure, dictionaries can be helpful aids in ascribing definitions to contract terms that are not defined by the contract. See Auto-Owners Ins. Co. v. Veterans of Foreign Wars Post 5906, 276 S.W.3d 298, 301 (Ky. Ct. App. 2009). But none of the dictionary definitions we have reviewed help Blake. Black’s Law Dictionary defines “borrow” as “To take something for temporary use.” Black’s Law Dictionary (10th ed. 2014). And Merriam-Webster says “borrow” means “to receive with the implied or expressed intention of returning the same or an equivalent.” Merriam-Webster Online Dictionary, http!//www.merriam-webster.com (12 June 2017). But nothing indicates that Omni’s use of the Mercedes was temporary, or that Omni received the Mercedes with the implied or expressed intention of returning it. Rather, Curtis’s testimony suggests that Davida’s severance package, and thus, Omni’s use of the Mercedes for that purpose, had no set end date: Omni “gave permission for Davida to drive the vehicle [the Mercedes] after she left employment with the company” and did not mention any set end date for that permission. (R. 69-11, PID 915.)
Blake directs us to adopt a definition of “borrow” from the cases we considered in Westfield Insurance Co. v. Young, No. 12-6523, slip op. (6th Cir. Sept. 9, 2013). That case also involved a Kentucky business auto insurance policy purporting to provide coverage for “[a]nyone else while using with [the named insured’s] permission a covered ‘auto’ [the named insured] own[s], hire[s], or borrow[s].” Id. at 3. There a community college had a program in which students could participate in live classroom vehicle repair projects. Id. at 2-3. A student’s employer allowed the college to use his inoperative truck for one of these projects. Id. at 2. After the repair was completed, the student was tasked with returning the vehicle. Id. While en route to a planned stop at his girlfriend’s house, the student collided with another vehicle, ultimately causing the death of the other driver. Id. The decedent’s family sought damages under the college’s insurance policy. Id. As here, “the dispositive issue regarding coverage ... [was] whether the College ‘borrowed’ [the third party’s] truck.” Id. at 3.
We first considered Travelers Indemnity Co. v. Swearinger, 169 Cal. App. 3d 779, *384 214 Cal.Rptr. 383 (Cal. Ct. App. 1985). The California Court of Appeals found that the term “borrow” was susceptible to two reasonable interpretations in the context of an automobile insurance contract. The court acknowledged that “borrow” could require that the purported borrower, a school district, exercise “dominion and control” over the vehicle. Id. at 785-86, 214 Cal.Rptr. 383. It also thought it possible that the school district “borrowed” the vehicle when it “properly gain[ed] the use of a third party’s vehicle,” regardless of whether the district had dominion over the vehicle. Id. at 785, 214 Cal.Rptr. 383. The district court in Westfield characterized this definition of “borrow” as “eonfer[ing] a benefit” regardless of actual possession. Westfield Ins. Co. v. Young, No. 11-275, 2012 WL 5421145, at *2 (E.D. Ky. Nov. 6, 2012).
To start, as we noted in Westfield, even California courts have rejected Swearinger and it is a minority view in other jurisdictions. Westfield, No. 12-6523, slip op. at 3. For instance, in American International Underwriters Insurance Co. v. American Guarantee and Liability Insurance Co., 181 Cal. App. 4th 616, 629-30, 105 Cal. Rptr.3d 64 (Cal. Ct. App. 2010), the California Court of Appeals commented, “In our view, the Swearinger decision is based on an inadequate definition of ‘borrow’ ” because the opinion did not address the requirement of prior California Supreme Court decisions that the borrower “exercised the requisite dominion and control over the [vehicle] to be a ‘borrower’[.]” Id. (citing Home Indem. Co. v. King, 34 Cal. 3d 803, 813-14, 195 Cal.Rptr. 686, 670 P.2d 340 (Cal. 1983)); but see City of Los Angeles v. Allianz Ins. Co., 125 Cal. App. 4th 287, 295, 22 Cal.Rptr.3d 716 (Cal. Ct. App. 2004) (suggesting that “the use of the vehicle for the [named insured’s] purposes ... constituted the [named insured’s] exercise of dominion and control over the vehicle”).
Further, the Swearinger formulation of “borrow” does not support a finding of coverage here. Even the Swearinger court stated that “borrow” implies “temporary use.” Swearinger, 169 Cal. App. 3d at 785, 214 Cal.Rptr. 383. Although Davida’s severance package is not part of the record, Curtis’ testimony indicates that it included indefinite use of the Mercedes. Thus, even if use of the Mercedes as part of Davida’s severance package was a business purpose (Appellant Br. at 33), the fact that the package was indefinite defeats the idea that Omni “borrowed” the Mercedes for this purpose.
The other case we considered in West-field was Schroeder v. Board of Supervisors of Louisiana State University, 591 So. 2d 342, 346 (La. 1991). That court interpreted “borrow” to mean “not only that one receives the benefit of the borrowed object’s use, but also that the borrower receives temporary possession, dominion, or control of the use of the thing.” Under this definition, the named insured, a university, did not “borrow” an automobile when a student got into an accident driving a fellow student to run an errand for a school administrator. Id. at 344. The situation, the court stated, was similar to a person “usfing] his auto to pick up a prescription for a sick friend”—the driver “may confer a significant benefit on the invalid, but no one would say that the bedridden friend had borrowed the auto used for the errand.” Id. at 346. Similarly here, while Omni may have been honoring its severance package, the benefit from the Mercedes’s use at the time of the accident accrued only to Davida herself, who was running a personal errand in California at the time of the accident. See Westfield, No. 12-6523, slip op. at 4 (“The College received a benefit from [the] truck only in its use as a teaching aid, not in its transportation to and from the College.”).
*385 Additionally, under the Schroeder analysis, Omni did not have “temporary possession, dominion, or control of the use of’ the Mercedes at the time of the accident. Omni is headquartered in Kentucky, while Davida’s use of the Mercedes occurred entirely in California. Davida was using the Mercedes as her personal vehicle. Davida was no longer employed by Omni at the time of the accident. Instead, she had started her own clothing and jewelry business at that point. And no record evidence suggests that the severance package included any terms limiting her use of the Mercedes, or any terms allowing Omni to demand the return of the vehicle. Blake’s argument that Omni remained in “constructive control” of the vehicle and had the “right to direct the use of the vehicle” (Appellant Br. at 34) is therefore unpersuasive. See Westfield, No. 12-6523, slip op. at 4 (finding that the College “did not have the right to direct the use of [the] truck ... [because] the college did not have an official policy regarding the transportation of live-project vehicles to and from the College”).
Blake seeks to extend Omni’s purported status as a borrower during Davida’s employment through Kentucky’s “initial permission” doctrine. That doctrine determines “whether a non-owner’s use of a vehicle exceeds the scope of permission given to that person.” Mitchell v. Allstate Ins. Co., 244 S.W.3d 59, 65 (Ky. 2008). It “allows for coverage even if the use of the vehicle was ‘not within the contemplation of the parties or was outside any limitations placed upon the initial grant of permission.’” Id. at 62 (citing 46 C.J.S. Insurance § 1053 (1993)). In adopting the doctrine, the Kentucky Supreme Court held, “as long as permission is initially given to a person to use a vehicle, insurance coverage may extend to subsequent vehicle users through the language of the [Policy’s] omnibus clause as long as those subsequent users have permission from the initial borrower to use the vehicle.” Id. at 65.
The problem with Mitchell is that the policy at issue did not contain the same “own, hire, or borrow” language as the policy here does. The policy in Mitchell defined “insured person” as,
1. You and any resident relative; 2. Any other person while in, on, getting into or out of an insured auto with your permission; 3. Any other person who is legally entitled to recover because of bodily injury to you, your resident relative, or an occupant of your insured auto with your permission.
Id. at 61 n.l. By contrast, Omni’s policy defined an “insured” as: “You for any covered ‘auto’, b. Anyone else while using with your permission a covered ‘auto’ you own, hire or borrow....” (R. 69-2, PID 843, 863 (emphasis added).) Thus, the initial permission doctrine may apply to permissive use of cars that Omni owned, hired, or borrowed. But, as discussed, the Mercedes was not such a car.
In short, whether or not Blake’s proposed definitions of “borrow” are reasonable, the facts of this case do not satisfy any of them. Omni was not a “borrower” of the Mercedes at the time of the accident. Therefore, coverage is not available under the Policy.
B.
Blake also argues that Kentucky’s “reasonable expectations” doctrine supports a finding of coverage. “The gist of the doctrine is that the insured is entitled to all the coverage he may reasonably expect to be provided under the policy.” Brown v. Indiana Ins. Co., 184 S.W.3d 528, 541 (Ky. 2005). Generally, this principle “pertains to alleged ambiguities within the policy,” id., and directs, “[w]here a *386 person has paid a premium for a policy, the policy should not be read technically to avoid paying benefits,” Ky. Emp’rs’ Mut. Ins. v. Ellington, 459 S.W.3d 876, 883 (Ky. 2015) (citing Aetna Cas. & Sur. Co. v. Commonwealth, 179 S.W.3d 830, 837 (Ky. 2006)). “The doctrine of reasonable expectations is used in conjunction with the principle that ambiguities should be resolved against the drafter in order to circumvent the technical, legalistic and complex contract terms which limit benefits to the insured.” Simon v. Cont’l Ins. Co., 724 S.W.2d 210, 213 (Ky. 1986) (quoting R.H. Long, The Law of Liability Insurance § 5.10B).
Blake emphasizes that “Omni specifically listed the 1999 Mercedes on the Selective Policy as a covered automobile” and “paid a premium commensurate with that listing[.]” (Appellant Br. at 36.) But that fact, although going to the equity aspect of the doctrine, does not show that another requirement of the doctrine is met; that the term “borrow” is ambiguous. True v. Raines, 99 S.W.3d 439, 443 (Ky. 2003), as amended (Apr. 2, 2003) (“The reasonable expectation doctrine ‘is based on the premise that policy language will be construed as laymen would understand it’ and applies only to policies with ambiguous terms— e.g., when a policy is susceptible to two (2) or more reasonable interpretations.” (citations omitted)). And even if we were to find, as the Swearinger court did, that the term “borrow” is subject to two reasonable interpretations, thus triggering the reasonable expectations doctrine, based on the reasons already given, there is no interpretation of “borrow” that could have given rise to a reasonable expectation that Selective extend coverage to Davida’s accident. Thus, the reasonable expectations doctrine does not save Blake’s argument.
IV.
For the foregoing reasons we affirm the district court’s order.

. The district court found, and the parties do not dispute on appeal, that the Commercial General Liability Policy did not provide coverage. (R. 72, PID 1006.)